DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, involving rulings in a final divorce decree. Because we conclude that the trial court did not err in the division of property or denial of the award of attorney fees, we affirm.
 {¶ 2} Appellant/cross-appellee, Kay Harris, and appellee/cross-appellant, William Harris, were married in 1990. The couple separated in 1998, after William's federal conviction and initial incarceration for conspiracy to commit mail fraud and conspiracy to commit money laundering. The conviction was a result of a government investigation of alleged fraudulent Medicare billings for supplies sold by the Harrises' companies or subsidiaries from 1991 to 1998.
 {¶ 3} Kay ultimately filed for divorce. The first trial was held and judgment entered in December 2000. This court dismissed an appeal from that judgment, determining that it was not a final and appealable order, and remanded it to the trial court to address William's motion for spousal support. See Harris v.Harris (Nov. 16, 2001), Lucas App. No. L-01-1224.
 {¶ 4} On remand, due to the death of the prior judge assigned to the case, a new trial was held in August 2002. The following evidence was presented by the parties. Kay, a special education supervisor, has been employed in the Toledo Public School system for over 31 years. She was earning $66,000 per year. William, on parole, was employed as a car salesman, with a monthly draw against commissions of $800. When the parties were first married, William had been employed as a pharmaceutical salesman.
 {¶ 5} The parties acknowledged that certain real estate, cash, and investment accounts had been seized as a result of the government investigation and subsequent criminal charges. Kay was never indicted on any charges and denied any knowledge of illegal activities, asserting that she relied on William and the accountants in financial matters and filing of tax returns. She also said that when William was incarcerated, she removed him from the health insurance coverage obtained from her employer.
 {¶ 6} William testified that he pled guilty to the federal charges and agreed to certain conditions, including restitution to the government of over $15,000,000. He also claimed that as part of the agreement, the government had agreed not to indict Kay if he pled guilty. William served approximately three years and 10 months before being released to a halfway house. William asserted that Kay was actively involved with the businesses, but admitted that she did not know about certain aspects, including two sexual harassment suits against him which were settled by payments of $40,000 and $6,000 plus attorney fees. Both parties acknowledged that a federal tax lien of $212,000 remains as a result of the audit of their 1994 tax return.
 {¶ 7} The parties disagreed as to the marital nature of certain properties, but stipulated to the following regarding the values of various cash accounts as of January 1, 2001: the marital portion of Kay's S.T.R.S. retirement account — $100,785; the PaineWebber account — $22,167(total); the American Express/I.D.S. account — $131, 541 with $10,902 being premarital; a Federal Credit Union account — $1,578 (total); a MidAm Bank account — $414; Kay's Sirens account — $1,980; and an attorney escrow account originally funded with $9,000 with a remaining balance of $4,355 (reduced by the court's previous award to William of attorney fees and deposition costs). Kay also retains an interest in the marital portion of William's potential Social Security benefits valued at $32,095.
 {¶ 8} Testimony was also presented regarding several real estate properties purchased by the parties. One property located at 5660 Bernath, Toledo, Ohio, was purchased just before the marriage and deeded in both parties' names. Kay testified that she provided a down payment of $4,000 to $6,000 for this property which should be considered non-marital. Other testimony was also presented by the parties as to the Harrises' companies and the circumstances leading to William's conviction and the forfeiture of much of the couple's cash, personal property, and real estate properties.
 {¶ 9} The court entered judgment in November 2002, specifically noting that it found both parties to be evasive and lacking credibility. It further determined that both parties were involved sufficiently in the Medicare fraud dealings to negate any claims that either were victims and without some measure of blame. The court awarded property and accounts as follows. As her separate property, Kay was awarded the condominium at 5704 Bernath, Toledo, Ohio, valued at $66,000. The court determined that the 5660 Bernath condominium, valued at $73,000 was marital property, and awarded each party one-half interest. The court noted, however, that since the property was jointly owned by the parties at the time they first married, neither party could now claim a separate interest.
 {¶ 10} The court calculated the total value of the following marital fund accounts to be $11,470.40: Federal Credit Union, MidAm Bank, and the original $9,000 in the joint attorney fee escrow account. Each party was awarded one-half of these funds, subject to William's credit for $5,123.70 for attorney fees advanced. Kay thus received $5,735.35 and William received $611.65. Kay was awarded $10,902 as pre-marital interest in the American Express/I.D.S. account, with the balance of the account divided equally between the parties. The Paine Webber account was also deemed marital property and equally divided.
 {¶ 11} William was awarded an interest in Kay's S.T.R.S. retirement account to be reflected in an order acceptable to the administrator of that fund. The amount of his interest was to be computed so as to "effectuate an equal distribution, as is reasonably possible, between the parties" of both pensions. The $212,000 tax lien was also divided equally between the parties. The court denied spousal support for either party and determined that Kay would not be required to reinstate and pay for health insurance through COBRA with her employer. Both parties have filed appeals from the court's judgment.
 {¶ 12} Kay sets forth the following three assignments of error:
 {¶ 13} "I. The trial court abused its discretion when it failed to recognize the Defendant's obvious financial misconduct and failed to appropriately apportion the remaining assets.
 {¶ 14} "II. The trial court committed error by improperly dividing marital assets.
 {¶ 15} "III. The court improperly classified non-marital assets as marital assets."
 {¶ 16} William argues the following sole assignment of error:
 {¶ 17} "The trial court erred in failing to award appellee/cross-appellant any spousal support."
 I. {¶ 18} We will address Kay's first two assignments of error together. In her first assignment of error, Kay contends that the trial court abused its discretion in failing to find that William had not committed financial misconduct. She then argues in her second assignment of error that she should have been awarded a greater portion of the marital assets due to William's alleged misconduct.
 {¶ 19} A trial court is vested with broad discretion in establishing an equitable division of marital property in a divorce action. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401; Berish v. Berish (1982), 69 Ohio St.2d 318, 319. An appellate court may modify a property division only upon a finding that the trial court abused its discretion in dividing the property. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. In determining whether the trial court abused its discretion, a reviewing court should not examine the valuation and division of a particular marital asset or liability in isolation. Brigantiv. Briganti (1984), 9 Ohio St.3d 220, 222. The reviewing court must, instead, view the property division under the totality of the circumstances to determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court. Id.
 {¶ 20} R.C. 3105.171(E)(3) permits a trial court to confer a greater award of marital property or a distributive award to one spouse if the other has engaged in financial misconduct. Pursuant to that statute, financial misconduct includes the dissipation, destruction, concealment or fraudulent disposition of marital assets. R.C. 3105.171(E)(3). A trial court also has discretion to determine whether a spouse has engaged in financial misconduct. See Huener v. Huener (1996), 110 Ohio App.3d 322, 326. The trial court is in the best position to evaluate evidence and assess the credibility of witnesses. Schneider v. Schneider
(Mar. 29, 1999), Brown App. Nos. CA98-03-007, CA98-03-009, citingOstendorf-Morris Co. v. Slyman (1982), 6 Ohio App.3d 46, 47. See, also, In re Jane Doe 1 (1990), 57 Ohio St.3d 135, 138, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80 (trial court's findings are presumed correct, since trial judge is best able to observe witnesses' demeanor, gestures and voice inflection in weighing credibility of testimony).
 {¶ 21} In this case, after hearing and viewing each party's testimony, the trial court specifically found that both parties were evasive and less than credible in their responses. Kay testified that she did not know exactly how much money (more than $150,000) was in a dresser drawer. She also stated that, even though she needed $3,000 or more per month to pay all her expenses, she would only cash her $1,400 paychecks when she "needed money." This testimony indicates that Kay was not completely honest or forthcoming in her disclosures to the court. In our view, the trial court was in the best position to view the parties during their testimony and to determine their credibility. Consequently, while Kay was never formally indicted, the trial court's assessment that both parties had some measure of culpability in the operation of fraudulent businesses is supported by the record. Therefore, we cannot say that the trial court abused its discretion in failing to find that William was more culpable simply because he was the one who was convicted. Likewise, since the court essentially found that the parties' actions acted as a setoff against each other, we cannot say the trial court abused its discretion in deciding to equally divide the remaining marital assets.
 {¶ 22} Accordingly, Kay's first and second assignments of error are found not well-taken.
 II. {¶ 23} Kay, in her third assignment of error, contends that the trial court erred in not crediting her with $6,000 towards the purchase of the real estate at 5660 Bernath.
 {¶ 24} The factual findings of the trial court relating to its classification of property as marital or separate are reviewed under a manifest weight standard. Barkley v. Barkley
(1997), 119 Ohio App.3d 155, 159. Thus, as noted previously, an appellate court should not independently review the weight of the evidence but should be guided by the presumption that the trial court's findings are correct where there exists some competent and credible evidence supporting such findings. Myers v. Garson
(1993), 66 Ohio St.3d 610, 614; Miller v. Miller (1988),37 Ohio St.3d 71, 74. The party claiming a separate interest pursuant to R.C. 3105.171 bears the burden of proof by clear and convincing evidence. Peck v. Peck (1994), 96 Ohio App.3d 731,734.
 {¶ 25} In the present case, the 5660 Bernath property was purchased just before the couple's marriage and was immediately placed in both names. The only evidence presented to the trial court of Kay's premarital interest in this real estate was her own testimony. She first stated that she paid "$4,000 or $6,000," but later changed her answer, saying it was about "$6,000." Kay offered no corroboration of this amount. Based upon her vague and varying testimony, we cannot say that Kay established proof of her premarital contribution by clear and convincing evidence of her premarital contribution. Therefore, the trial court's determination was not against the manifest weight of the evidence.
 {¶ 26} Accordingly, appellant's third assignment of error is found not well-taken.
 III. {¶ 27} William, in his cross-assignment of error, claims that the trial court erred in denying his request for spousal support in the form of attorney fees. We disagree.
 {¶ 28} The trial court has broad discretion in awarding attorneys fees in divorce actions. Swanson v. Swanson (1976),48 Ohio App.2d 85, 90. A court's decision regarding the award of attorney fees as part of an award of spousal support will not be disturbed on appeal absent a showing of a clear abuse of that discretion. See Guziak v. Guziak (1992), 80 Ohio App.3d 805,816; Knowles v. Knowles (Dec. 18, 1992), Lucas App. No.
 {¶ 29} L-92-033. An abuse of discretion is more than a mere error of law; rather, it implies that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1993), 5 Ohio St.3d 217, 219.
 {¶ 30} Attorney fees are awarded as spousal support, and in awarding such fees, the court must consider the factors of R.C.3105.18(C). See Williams v. Williams (1996),116 Ohio App.3d 320. In addition to the other factors listed, R.C.3105.18(C)(1)(n) provides that the court may consider "any other factor that the court expressly finds to be relevant and equitable."
 {¶ 31} In this case, the trial court specifically noted that William's decrease in income was a direct result of his own actions in conducting fraudulent business transactions. Moreover, William had already received more than $5,000 for his litigation costs and attorney fees. Therefore, since the trial court equitably divided the remaining marital assets, we cannot say that the trial court's order that each party pay their own remaining attorney fees was an abuse of discretion.
 {¶ 32} Accordingly, William's sole assignment of error is found not well-taken.
 {¶ 33} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed equally between the parties.
Judgment Affirmed.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J and Arlene Singer, J., concur.