[Cite as *Jenkins v. Jenkins*, 2021-Ohio-153.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

JENNIFER JENKINS,                          :

    Plaintiff-Appellant/
    Cross-Appellee,                        :       Case No.   19CA19

    vs.                                    :

RICK JENKINS,

                                           :       DECISION AND JUDGMENT ENTRY


    Defendant-Appellee/
    Cross-Appellant.                       :

---

APPEARANCES:

John W. Judkins, Greenfield, Ohio, for appellant.

Adam S. Eliot, Columbus, Ohio, for appellee.

---

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-14-21
ABELE, J.

{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment that

granted a divorce to Jennifer Jenkins, plaintiff below and appellant/cross-appellee (appellant

herein), and Rick Jenkins, defendant below and appellee/cross-appellant (appellee herein).

Appellant assigns two errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ARBITRARILY AND CAPRICIOUSLY
AWARDED APPELLEE THE EXCLUSIVE RIGHT TO
PURCHASE THE REAL PROPERTY FROM THE MARITAL

ESTATE."

SECOND ASSIGNMENT OF ERROR:

"THE ULTIMATE DIVISION OF PROPERTY AND DEBT IN THIS MATTER WAS INEQUITABLE."

{¶ 2} Appellee also raises two assignments of error:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY MISCHARACTERIZING, INCORRECTLY VALUING, AND OFFSETTING AGAINST OTHER PROPERTY APPELLEE/CROSS-APPELLANT'S OHIO PERS BENEFITS."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ORDERING APPELLEE/CROSS-APPELLANT TO CONVERT HIS DISABILITY BENEFIT TO A SURVIVORSHIP ANNUITY RETIREMENT BENEFIT."

{¶ 3} The parties married in December 1987. Throughout most of the marriage, appellee was employed with the State of Ohio as a corrections officer and participated in the Ohio Public Employees Retirement System (PERS). In 2009, appellee sustained an injury, stopped working and began to receive disability benefits.

{¶ 4} In 2016, the parties purchased property located on State Route 72 in Leesburg. The property totals 13.52 acres and contains a 3,520 square-foot home and a pole barn. The parties used the home as their marital residence.

{¶ 5} The following year, the parties purchased a second residence, located on Chestnut Road, for $175,000 using funds from a home equity line of credit attached to their marital residence. The parties agreed that appellant's sister and brother-in-law, the Taylors, could live

in the home and attempt to purchase it.

{¶ 6} On March 27, 2018, appellant filed a complaint for divorce. Appellee answered and filed a counterclaim for divorce. At the final hearing, the parties presented a substantial amount of evidence regarding their property, as well as appellee's PERS benefits.

{¶ 7} With respect to the State Route 72 marital residence, the parties agreed to a $400,000 value. Appellant continued to live in the marital residence through the final hearing and wished to keep the property. Appellant also testified that the marital residence is subject to a $263,000 home equity line of credit. Appellant stated that the parties used $175,000 from the home equity line of credit to purchase the Chestnut Road property.

{¶ 8} Appellant explained that she and appellee purchased the Chestnut Road property and intended to allow appellant's sister and brother-in-law (the Taylors) to purchase the home. Appellant stated that the parties agreed to give the Taylors through September or October 2019 to obtain the means necessary to purchase the property for $175,000. Appellant asked the court to award her the marital residence and to apply the proceeds from the sale of the Chestnut Road property to the home equity line of credit so that appellant could refinance the home equity line of credit into her name alone.

{¶ 9} David Kelley testified on appellant's behalf as a pension evaluation expert witness. Kelley explained that appellee receives "the original OPERS disability retirement." Kelley stated that under the original plan, appellee receives benefits based upon the accrued years of service and the number of years needed to reach age 60. Kelley related that in appellee's case, appellee had 22 years of service and 17 years remaining until he reached the age of 60. Kelley stated that the disability benefit system thus gave appellee 39 years of service credit. Kelly

indicated that appellee's initial monthly benefit was $2,800, and with cost-of-living adjustments appellee now receives $3,556.73.

{¶ 10} Kelley stated that he believed that the court had two options to determine appellee's PERS benefits valuation. Kelley explained that because appellee receives his benefit under the original plan, his benefit is considered a disability retirement benefit. Under the revised plan, an individual in appellee's position would not receive disability benefits upon reaching the age of 65, but instead, would receive a retirement benefit. Kelley thus indicated that in a situation that involves disability retirement benefits under the original plan, the court would need to make a "philosophical distinction" as to when disability ends and retirement begins.

{¶ 11} Kelley explained that he evaluated appellee's PERS account present value as of September 26, 2018. In seven years, once appellee reaches age 60, appellee would receive $3,948.80, presuming a 2% COLA. Kelley testified that presuming the disability benefit transmutes to a retirement benefit at age 60 means that the present value of the marital portion of appellee's PERS account is $596,855.97.

{¶ 12} Appellee did not present an expert witness to counter Kelley's testimony, but instead introduced an affidavit from Allen Foster, PERS Director of Benefits Administration. Foster's affidavit states that "assuming [appellee's] disability benefit is terminated, assuming he applies for retirement at earliest eligibility at age 60, assuming he has no further service as of May 31, 2009 which is the last date on which OPERS received contributions for him, and assuming he selects the Single Life Benefit, without the partial lump sum option payment (PLOP), at retirement from this System, his gross monthly benefit is estimated to be $986.91

nothing remaining on his account payable to his beneficiary following his death." Appellee testified that this document indicated that if his disability terminated at age 60, then his monthly benefit would be $986.91.

{¶ 13} After the parties presented evidence, appellant submitted a written closing argument and asserted that she is entitled to $213,518.50 of appellee's PERS account. Appellant requested, however, that the court not award her $213,518.50 of appellee's PERS account, but instead award her the marital residence, the $175,000 that will be received upon the sale of the Chestnut Road property, the parties' vast antique collection, the tax refund, and the sales proceeds remaining from a third property that the parties recently sold.

{¶ 14} Appellee did not submit a written closing argument, but instead submitted proposed findings of fact and conclusions of law. Appellee proposed that the court find that appellee's retirement benefit at age 60 would be $986.91 per month and appellee is entitled to retain all his PERS benefits without any distribution to appellant. Appellee asserted that his monthly retirement benefit at age 60 ($986.91) represents approximately .2499 of his total monthly disability retirement benefit at age 60 ($3,948.80). Appellee thus claimed that appellant would be entitled to .2499 of the present value of the marital portion of his PERS account ($596,855.97). Appellee proposed that appellant's share would total $149,154.31. He alleged that appellant's share of his PERS account is less than the amount of appellant's Social Security offset and, thus, appellant is not entitled to any portion of his PERS account.

{¶ 15} On March 8, 2019, the magistrate entered a decision to grant the parties a divorce and divide the property. The magistrate awarded appellant the SR 72 property, valued at $400,000, and ordered appellant to remain responsible for the home equity line of credit. The

magistrate noted that appellant claimed that the home equity line of credit had a balance around $263,000, but the magistrate found that the evidence presented at trial demonstrated that $260,282.40 was the balance owed. After accounting for the home equity line of credit, appellant would have $139,707.60 equity in the home. The magistrate ordered appellant to refinance the home equity line of credit so that it is in her name only, but if appellant is unable to refinance the credit in her name only, the property shall be sold and appellant will receive all of the proceeds.

{¶ 16} The magistrate also noted that neither party desired to keep the Chestnut Road property and the Taylors should have the opportunity to purchase the property for $175,000, as long as the sale closes by September 10, 2019. The magistrate further ordered that if the Taylors do not purchase the property, the parties must sell the property and equally divide the proceeds.

{¶ 17} The magistrate also determined that appellant is entitled to a share of appellee's PERS account. The magistrate found that the fair market value of the marital portion of appellee's PERS account is $596,855.97. The magistrate also decided that surrendering the marital retirement portion of appellee's pension to the disability portion would not be equitable given the parties' 31-year marriage. The magistrate further noted that while receiving disability benefits, appellee operated a cattle farm and engaged in other work.

{¶ 18} The magistrate determined that appellee's monthly benefit at age 60 would be $3,948.80 and the amount received once appellee reached age 60 would represent retirement income, not disability income. The magistrate stated that once appellee reaches retirement age, his "benefit payment no longer represents wages and it transmutes into retirement and both parties should share in the awarded benefit." The magistrate found that appellant would be

entitled to $213,518.80 after a set off of appellant's social security amount. The magistrate additionally reduced the amount to equalize the property division. Thus, the magistrate determined that appellant is entitled to $160,773.40 of appellee's PERS account. The magistrate also ordered appellee "to elect this retirement component at age 60" and to "elect a post-retirement joint and survivor annuity at retirement" in order to provide appellant "with survivor benefits to the extent of her assigned interest."

{¶ 19} The magistrate also divided the parties' marital property as follows:

| Appellee/Cross-Appellant | | Appellant/Cross-Appellee | |
|---|---|---|---|
| Yamaha Viking | $7,500 | 11728 SR 72 | $139,707.60 |
| ½ Chestnut Road | | ½ Chestnut Road | |
| Antiques | $32,295 | Antiques | $33,334 |
| Personal Property | $6,298 | Personal Property | $9,966 |
| Hustler Mower | $0 | X Mark Mower | $1,500 |
| Large Stone | $0 | Marlin gun | $0 |
| Deer Chandelier, Mounts, and Targets | $7,600 | 2006 Mercedes | $6,588 |
| Honda Accord | $0 | 2006 Honda Civic | $2,990 |
| 2012 Chevy Truck | $22,033 | Social Security | $169,818.97 |
| Term Life Policy | $0 | Term Life Policy | $0 |
| Account #7960 | $20,376.01 | Account #8948 | $10,554.82 |
| Account #1442 | $6,230.89 | Account #4842 | $3,182.69 |
| ½ 2018 tax return | | ½ 2018 tax return | |
| OPERS | $436,082.57 | OPERS | $160,773.40 |
| IOLTA Funds | $38,841.11 | IOLTA FUNDS | $38,841.10 |

| | | | |
|---|---|---|---|
| TOTAL | $577,256.58 | TOTAL | $577,256.58 |

{¶ 20} Both parties filed objections to the magistrate's decision.

{¶ 21} Appellee objected regarding his PERS benefits and argued that the evidence does not show that his retirement benefit will be $3,948.80 at age 60. Instead, appellee asserted that the value of his monthly retirement benefit at age 60 will be $986.91 and appellant is not entitled to any interest in his PERS benefits.

{¶ 22} Appellee additionally objected to the magistrate's decision that he convert his PERS disability benefit into a retirement benefit with a joint survivorship election. Appellee argued that the magistrate's requirement that he convert his $3,948.80 per month PERS disability benefit to a $986.91 retirement benefit will reduce the value of his benefit by approximately 75%.

{¶ 23} Appellant also objected to the magistrate's division of marital property and debt and alleged that the decision does not equitably divide the marital property and debt. She noted that the magistrate awarded her the marital residence and the marital residence has a balance of $260,292.40 for the home equity line of credit. Appellant pointed out that $175,000 of the $260,292.40 owed on the home equity line of credit was used to purchase the Chestnut Road property and awarding appellant the marital residence and debt associated with the home equity line of credit is not an equitable division of the parties' marital debt.

{¶ 24} Appellant also objected to the magistrate's decision regarding the allocation of proceeds from the Chestnut Road property once it is sold. Appellant asserted that the proceeds

from the Chestnut Road property should be used to reduce the balance of the home equity line of credit on the marital residence. Appellant again noted that the parties used $175,000 from the home equity line of credit on the marital residence to purchase the Chestnut Road property. Appellant claimed that "[i]t is fundamentally inequitable to saddle [appellant] with a significant debt burden that is directly related to real property which will not be owned by [appellant]." Appellant argued that requiring her to be responsible for paying the $175,000 used to purchase the Chestnut Road property but awarding her only one-half the value of the property is inequitable. Appellant asserted that it would be more equitable to award her the entire proceeds realized from the eventual sale of the Chestnut Road property and to award appellee a greater share of his PERS benefits.

{¶ 25} Appellant also objected to the magistrate's decision that she attempt to refinance the home equity line of credit in her name alone. She contended that financing "the debt into her name alone is essentially an impossibility." Appellant noted that she works at a furniture store, has "limited income," and it is not reasonable to think that she could finance the $260,000 debt into her name alone. Appellant thus asserted that the magistrate's decision will, in effect, require her to sell the property. Appellant contended that the magistrate failed to take into consideration the economic desirability of keeping the asset intact. Consequently, appellant asked the trial court to award her a greater share of the parties' liquid assets so that she could either pay off the home equity line of credit or reduce the balance to an amount to allow her to refinance the debt into her name alone.

{¶ 26} Appellee responded that appellant's proposal would take nearly all of the parties' liquid assets so that she could retain the $400,000 residence and appellant's proposal is not

equitable.   Appellee also asked the court to grant him the opportunity to buy the Chestnut Road property if the Taylors are unable to do so.

{¶ 27} Appellee additionally asserted that if he had not received a disability benefit, he would not receive $3,948.80 at age 60.   He claimed that he "would not receive anything close to the disability benefit if he were to receive a retirement benefit."   Appellee thus claimed that he will continue to receive a disability benefit until his death, unless he is deemed to no longer be disabled.   If appellee is deemed to no longer be disabled, then he would qualify for an age and service retirement benefit at age 60, but at a much lower rate.

{¶ 28} On September 4, 2019, the trial court overruled appellee's objection regarding the division of his PERS benefits.   The court determined that the magistrate properly applied the law and found that appellee's disability benefit transmutes to retirement income at age 60.   The court also overruled appellee's objection to the magistrate's order that he convert his disability benefit into a retirement benefit with a joint survivor election.   The court determined that appellee's objection "is not supported by the evidence."   The court also overruled appellant's objection to the magistrate's decision that the parties should equally divide the proceeds from the sale of the Chestnut Road property.   With respect to the Chestnut Road property, the court granted appellee the opportunity to purchase the property for $175,000, if the Taylors do not purchase the property.   The court further ordered that appellant would receive one-half of the sale price.

{¶ 29} Later, the trial court entered a decree of divorce that largely adopted the magistrate's decision.   The court ordered appellant to draft a Division of Property Order (DOPO) to effectuate the division of her share of appellee's pension ($160,773.40).   The court additionally stated that appellant could require appellee to obtain term life insurance until he

reaches age 60 in order to protect her interest in appellee's pension. The court also ordered appellee to "elect this retirement component at age 60" and "elect a post-retirement joint and survivor annuity at retirement," because doing so "will provide [appellant] with survivor benefits to the extent of her assigned interest."

{¶ 30} This appeal followed.

I

{¶ 31} Appellant's assignments of error and appellee's cross-assignments of error challenge the trial court's division of property. Before we discuss the assignments of error individually, we first set forth the principles that govern our review of the trial court's decision.

{¶ 32} Trial courts enjoy broad discretion when dividing marital property in a divorce proceeding. *E.g., Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989); *Elliott v. Elliott*, 4th Dist. Ross No. 05CA2823, 2005–Ohio–5405, ¶ 17. Accordingly, an appellate court will not reverse a trial court's decision regarding the allocation of marital property absent an abuse of that discretion. *Elliott* at ¶ 17. An "abuse of discretion" means that the court acted in an "'unreasonable, arbitrary, or unconscionable'" manner or employed "'a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008–Ohio–4493, 894 N.E.2d 671, ¶ 23. Moreover, a trial court generally abuses its discretion when it fails to engage in a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Additionally, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply

substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34. Moreover, a court that is reviewing whether a trial court abused its discretion when dividing marital property must view the property division in its entirety and consider the totality of the circumstances. *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984); *accord Byers v. Byers*, 4th Dist. Ross No. 09CA3124, 2010–Ohio–4424, ¶ 19; *Elliott* at ¶ 17.

{¶ 33} Although trial courts possess broad discretion to divide marital property, the Ohio Revised Code requires trial courts to divide marital and separate property equitably between the parties. R.C. 3105.171(B). In most cases, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). If, however, an equal division would produce an inequitable result, the court must divide the property equitably. *Id.* Additionally, "[a]lthough R.C. 3105.171 does not explicitly address the division of marital debt * * * marital debt is subject to allocation as part of the property distribution and that debt allocation is guided by the same equitable factors contained in R.C. 3105.171." *Polacheck v. Polacheck*, 9th Dist. Summit No. 26551, 2013–Ohio–5788, ¶ 18; *accord Machesky v. Machesky*, 4th Dist. Ross No. 10CA3172, 2011–Ohio–862, ¶ 10, quoting *Smith v. Emery–Smith*, 11th Dist. Geauga No.2009–G–2941, 2010–Ohio–5302, ¶ 45 (stating that "'[a] trial court must take into account marital debt when dividing marital property'"); *Elliott* at ¶ 25; *Samples v. Samples*, 4th Dist. Washington No. 02CA21, 2002–Ohio–544. Thus, a trial court should equally divide marital debt, unless an equal division would be inequitable.

{¶ 34} R.C. 3105.171(F) sets forth a list of factors that a trial court shall consider in order to ensure an equitable division of the parties' marital property:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 35} We again note that when an appellate court reviews a trial court's property division, the appellate court must not consider any items in isolation, but rather, must consider the property division as a whole. *Briganti*, 9 Ohio St.3d at 222; *accord Sinkovitz v. Sinkovitz,* 4th Dist. Hocking No. 15CA18, 2016–Ohio–2861, ¶ 35. "The appropriate consideration is whether the trial court's disposition of these items resulted in a property division, which, viewed in its entirety, was an abuse of discretion." *Briganti*, 9 Ohio St.3d at 222.

II

A

{¶ 36} In her first assignment of error, appellant asserts that the trial court's decision to allow appellee the exclusive right to purchase the Chestnut Road property for $175,000 without granting appellant a similar right constitutes an abuse of discretion. Appellant contends that the trial court's decision devalues the marital estate by not allowing for a maximum sale price of the

real estate and that it "arbitrarily prohibits Appellant from purchasing the real property through the grant of an exclusive right to Appellee." Appellant further notes that granting appellee the exclusive right to purchase the property contradicts the court's finding that neither party wished to keep the real estate.

{¶ 37} Appellee argues that the trial court did not abuse its discretion by giving him the right to purchase the Chestnut Road property. Appellee observes that the court awarded appellant the larger, former marital home and that the court's decision to give him the option to purchase the other property is fair and equitable. Appellee also points out that he informed the trial court in his objections to the magistrate's decision that he "would be willing to take the Chestnut Road property" and pay appellant her share of the equity.

{¶ 38} Once again, we emphasize that appellate courts that review a property division must consider the property division in its entirety and not consider any one aspect of the property division in isolation. *Sokolowski v. Sokolowski*, 7th Dist. No. 16 JE 0028, 2017-Ohio-9216, 101 N.E.3d 1105, 2017 WL 6550616, ¶ 27, quoting *Hawkins v. Hawkins*, 2d Dist. No. 2016-CA-26, 2017-Ohio-4201, ¶ 24, 2017 WL 2492786 (stating that "'a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award'"). "In determining whether the trial court abused its discretion, a reviewing court should not examine the valuation and division of a particular marital asset or liability in isolation." *Harris v. Harris*, 6th Dist. Lucas No. L-02-1369, 2004-Ohio-683, ¶ 19, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984). Rather, a reviewing court must "view the property division under the totality of the circumstances to determine whether the property division reflects an unreasonable, arbitrary or

unconscionable attitude on the part of the domestic relations court." *Id.*, citing *Briganti* at 222.

{¶ 39} In the case sub judice, we do not agree with appellant that the trial court abused its discretion by granting appellee the right to purchase the Chestnut Road property for $175,000. The trial court could have rationally determined that giving each party the opportunity to purchase one of the two residential properties acquired during the marriage was fair and equitable given the totality of the property division.

{¶ 40} Moreover, appellant's argument considers the trial court's decision to grant appellee the right to purchase the Chestnut Road property for $175,000 completely out of context of the entire property division. If considered in isolation, as appellant argues, the court's decision to grant appellee the right to purchase the property, if appellant's sister and brother-in-law do not, may appear to be unreasonable or arbitrary. However, considering the court's decision in light of the totality of its property division, the court's decision is not unreasonable or arbitrary. The trial court granted appellant the marital residence, valued at $400,000, and gave her the option to refinance the existing home equity line of credit so as to be in her name alone. Appellant did not give the trial court any indication that she wished to have the opportunity to purchase the Chestnut Road property in addition to, or in lieu of, the marital residence. Instead, appellant continually maintained the position that she wanted to keep the marital residence along with all of the money realized upon a sale of the Chestnut Road property. Thus, the trial court's decision to grant appellee the right to purchase the Chestnut Road property is not unreasonable, when considered in light of the entire property division. The court detailed its findings in a lengthy decision that exceeded eighty pages. The court gave each party a near-equal share of the net marital assets. The court awarded appellant the property with a

higher overall value and afforded appellee the opportunity to obtain the second property as long as he paid appellant her one-half share of the equity. Under these circumstances, we are unable to conclude that the trial court abused its discretion.

{¶ 41} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

B

{¶ 42} In her second assignment of error, appellant asserts that the trial court abused its discretion when it divided the parties' marital property and debt. Appellant argues that the court did not equitably divide the parties' martial property and debt and did not consider "the economic desirability of keeping assets in tact [sic] in lieu of division, the costs of sale, and the costs of the assumption of debt."

{¶ 43} Appellant points out that the trial court ordered appellant to be responsible for the home equity line of credit attached to the marital residence and the parties used $175,000 of the home equity line of credit to purchase the Chestnut Road property. Appellant contends that fairness dictates that all proceeds from the sale of the Chestnut Road property be used to pay the home equity line of credit, rather than requiring her to be responsible for the entire $175,000. Appellant additionally contends that the court's decision to require her to be responsible for the entire home equity line of credit is inequitable. Appellant alleges that her income is not sufficient to qualify for a loan to refinance the home equity line of credit and that she will be forced to sell the marital residence.

{¶ 44} Thus, appellant argues that "the most equitable division of the real property would be to order the sale of the Chestnut Road property * * * [and] to apply the entire proceeds of such

sale to the equity line of credit and to grant to Appellee his entire interest in the OPERS pension/disability account to compensate for this division."

{¶ 45} Once again, we note that trial courts enjoy broad discretion when equitably dividing marital property. In the case sub judice, we do not believe that the trial court abused its discretion by requiring appellant to be responsible for the entire debt attached to the marital residence. Other courts have considered similar arguments when one party in a divorce takes an encumbered marital asset and determined that a trial court does not abuse its discretion by ordering the party awarded the encumbered asset to assume the liability attached to it. *Downs v. Downs*, 4th Dist. Ross No. 07CA2998, 2008-Ohio-3702, 2008 WL 2853675, ¶ 11 (determining that trial court did not abuse its discretion by requiring husband to be responsible for mortgage on marital residence when he retained the asset); *Wolfe v. Wolfe*, 4th Dist. Scioto No. 97CA2526, 1998 WL 472618 (July 30, 1998) (concluding that requiring husband to be responsible for debts secured by the marital residence was "perfectly logical" considering husband's desire to keep marital residence)*; see Harrison v. Harrison*, 11th Dist. Ashtabula No. 2004-A-0003, 2005-Ohio-6293, 2005 WL 3150255, ¶ 19 (rejecting husband's argument that spousal support award too high given his responsibility for paying debt associated with the mortgage and home equity loan and noting that if husband "believe[d] the costs associated with living in the marital residence are too high, he could sell the house, pay off the mortgage, and find less expensive housing").

{¶ 46} Likewise, in the case sub judice we do not believe that the trial court abused its discretion by requiring appellant to be responsible for the debt attached to the marital residence. Here, appellant made it clear that she wanted to keep the marital residence. The trial court

recognized that appellant may have difficulty attempting to refinance the home equity line of credit into her name alone in view of her limited income. The court noted, however, that it awarded appellant a sizeable share of liquid assets in order to help her reduce the balance on the home equity line of credit so that she may be more likely to qualify for financing. The court awarded appellant approximately $38,000 in cash from the IOLTA funds along with one-half the proceeds from the sale of the Chestnut Road property. The court entered orders so that appellant would receive the proceeds of the Chestnut Road sale before she would be required to refinance the home equity line of credit on the marital residence. Thus, it appears that the court took steps to attempt to preserve appellant's ability to remain in the marital residence.

{¶ 47} We therefore do not agree with appellant that the trial court abused its discretion when it divided the parties' marital property and required appellant to be responsible for the home equity line of credit. Instead, the trial court's decision shows that it acted reasonably by giving appellant time, as well as liquid assets, in order to attempt to refinance the home equity line of credit so that appellant could continue to live in the home.

{¶ 48} Further, we do not believe that appellant's "arguments regarding the different ways the trial court could have structured" the property division establishes an abuse of discretion. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, 2015 WL 1976430, ¶ 63. Moreover, as appellee observes, appellant's proposal would give her nearly all of the parties' liquid assets. The trial court could have reasonably determined that attempting to award each party a sizeable share of the liquid assets would be more equitable than to award nearly all liquid assets to appellant. Thus, while we recognize that the trial court could have structured the property division in a number of ways, we cannot conclude that the trial court

abused its discretion by dividing the parties' marital property in the manner that it did.

{¶ 49} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

A

{¶ 50} In his first cross-assignment of error, appellee asserts that the trial court incorrectly characterized, valued, and offset his PERS benefits.   Appellee first claims that the court incorrectly characterized the entire amount of his PERS benefits received upon retirement age as marital property.   Appellee contends that if he continued to receive disability retirement benefits after age 60, then only $986.91 of the monthly benefit represents retirement income.   Appellee thus claims that the remaining amount represents disability income and remains his separate property.

{¶ 51} Appellee next asserts that the trial court incorrectly valued his pension.   Appellee contends that the retirement portion of his benefit, $986.91, represents 24.99% of his disability benefit.   Thus, appellant would only be entitled to 24.99% of the present value of the marital portion of his pension, or $149,154.31.   Appellee asserts that because the amount is less than the present value of the marital portion of appellant's social security retirement benefits, the court should have awarded appellee the entire value of his pension without any offset.

{¶ 52} Appellee further disputes the trial court's decision to offset appellant's share of the pension against the property division.   Appellee contends that his pension benefit "is not guaranteed" and that the trial court, therefore, should have entered a Division of Property Order rather than offsetting the amount from the property division.

{¶ 53} We initially note that the classification of property as marital or separate generally constitutes a question of fact. *See Wigal v. Wigal*, 4th Dist. Washington Nos. 06CA70 and 07CA10, 2008–Ohio–747, at ¶ 35. Thus, appellate courts ordinarily review the classification of property as marital or separate under a manifest-weight-of-the evidence standard and will affirm if some competent, credible evidence supports the classification. *See id.*

{¶ 54} "Marital property" includes retirement benefits of the spouses. R.C. 3105.171(A)(3)(a)(i). It does not, however, include any "separate property," which includes "[c]ompensation to a spouse for the spouse's personal injury." R.C. 3105.171(A)(3)(b) and (6)(a)(vi). Disability benefits constitute compensation received for personal injury. *Bakle v. Bakle*, 2d Dist. Greene No.2009 CA 9, 2009–Ohio–6003, at ¶ 13, citing *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006–Ohio–5741, at ¶ 64; *see, also, Arkley v. Arkley*, 7th Dist. Jefferson No. 03 JE 10, 2003–Ohio–7021, at ¶ 14, citing *Bauser v. Bauser*, 118 Ohio App.3d 831, 835, 694 N.E.2d 136 (2nd Dist. 1997). "[D]isability benefits * * * are a form of wage continuation designed to compensate the recipient for wages that he would otherwise receive but for the disability." *Elsass v. Elsass*, 2nd Dist. Greene Nos. 93–CA–0005, 93–CA–0016, *5 (Dec. 29, 1993). Thus, disability benefits do not constitute marital property unless "'they are accepted by the retiree in lieu of retirement pay.'" *Id.*, quoting Principles and Guidelines for the Division of Property in Actions for Divorce in Ohio (Mar.1981), 54 Ohio Bar 491. When disability benefits are accepted in lieu of retirement pay, "they are marital property to the extent that the disability benefit includes the retirement pay value." *Messer v. Messer*, 2nd Dist. Darke No. 1570, 2002–Ohio–4196, at ¶ 8. "At that time, the benefits should be considered a marital asset to be given a value based upon the benefits accrued as of the date set for valuation of marital

property." *Mueller v. Mueller*, 2nd Dist. Montgomery No. 20847, 2005-Ohio-5915, 2005 WL 2978947, ¶ 14, citing *Potter v. Potter*, 9th Dist. Wayne No. 01CA0033, 2001–Ohio–1770 ("While Mrs. Potter's disability benefits are not a marital asset, the benefits certainly represent either a retirement benefit or a payment in lieu of old-age retirement pay as of Mrs. Potter's retirement date"); *Motter v. Motter*, 3rd Dist. Wyandot No. 16–99–14, 2000–Ohio–1714 (explaining that until husband "reached the age to be eligible for retirement, his disability benefits were wage replacement and therefore his separate property," but at the first retirement date set forth in his plan, the gross amount of the benefit "shall be divided and paid equally to the parties as any marital asset.").

{¶ 55} "* * * [T]o be entitled to the marital portion of retirement benefits in this situation, the non-participant spouse has the burden to prove that the disability benefits are being received in lieu of retirement benefits or that the retirement benefits the participant spouse would otherwise be entitled to receive are being reduced by the receipt of disability benefits." *Young v. Young*, 2nd Dist. Clark Nos. 08CA59 and 08CA61, 2009-Ohio-3504, 2009 WL 2096291, ¶ 29.

{¶ 56} In *Mann v. Mann*, 4th Dist. Athens No. 09CA38, 2011-Ohio-1646, 2011 WL 1233325, this court upheld the trial court's finding that the wife's disability benefit transmuted into a retirement benefit. At the time of the parties' divorce, the wife had been receiving a $3,458.98 monthly disability allowance. The wife's expert witness testified that the wife "is projected to receive a monthly pension benefit of $902 at age 60, of which 98.6% is marital property." *Id.* at ¶ 4. The expert stated that the present value of the wife's pension is $167,002, using a life expectancy of 85, and $88,074, using a life expectancy of 71.

{¶ 57} The husband's expert witness testified that the present value of the wife's pension

was $430,996.83. The husband's expert further stated that the wife's disability income was "replacement income until it transmutes into retirement income." *Id.*

{¶ 58} The trial court subsequently entered a divorce decree and credited the husband's expert's testimony that the wife's disability income was "replacement income until it transmutes into retirement income." *Id.* at ¶ 29. The wife appealed and asserted that the trial court erred by determining that her separate-property disability-benefit transmutes to a marital-property retirement-benefit when she reaches retirement age. We, however, rejected the wife's argument. We noted that case authority supported the trial court's finding and that the trial court was entitled to credit the husband's expert witness's testimony. We therefore upheld the trial court's finding that the wife's disability income is separate-property replacement income until it transmutes into marital-property retirement income.

{¶ 59} Similarly, in the case sub judice appellant presented evidence and testimony from an expert witness, Kelley, who stated that appellee's disability benefit transmutes into a retirement benefit at age 60. Kelly recognized that experts do not agree on this issue, however. Kelly nevertheless explained the reasoning behind his opinion, and the trial court obviously found a rational basis to credit Kelly's opinion that appellee's disability benefit transmutes into a retirement benefit at age 60.

{¶ 60} We further note that appellant submitted into evidence a chapter from a book that Kelley co-authored, *Dividing Pensions in Divorce: Negotiating and Drafting Safe Settlements with QDROS and Present Values*. Section 9.02[B][1] discusses the transmutation argument as follows:

The argument that the full disability pension beginning at the age of

retirement is the retirement component is based on two basic arguments. First, once the retirement age is reached the payments no longer represent wages, but instead transmute into the retirement plan. How many 65-year-old firefighters are there? The fact that the plan may have a more generous benefit than the accrued pension is just a windfall that should be shared by both parties because it was awarded during the marriage. Second, the windfall nature of the benefit has been tacitly acknowledged by many public pensions in moving to less generous disability programs. Shouldn't both parties share in an especially generous award, given during the marriage that no longer represents income replacement?

Gary A. Shulman, David I. Kelley, and Daniel E. Kelley, *Dividing Pensions in Divorce: Negotiating and Drafting Safe Settlements with QDROS and Present Values*, Section 9.02[B][1] (3d Ed. 2019).

{¶ 61} Additionally, the trial court entered a detailed decision that outlined the reasons for its finding that part of appellee's PERS pension is marital property. The court explained as follows:

> The Court finds that [appellee] had to give up retirement pension to obtain disability payments and the amount of the marital retirement pension surrendered to the plan still exists as a marital asset within the disability pension. In essence the Court must distinguish between the income replacement function of a disability pension and the retirement component of the pension. Further the Court is considering the amount of retirement [appellee] is giving up to get this disability. It is not fair or equitable to say that [appellee] can give up all of his retirement asset to get something that becomes separate property.
> The parties herein were married for 31 years. [Appellee] earned 22.667 years of service credit at the prison of which 21.5 years was during the marriage. So, 84.85% of his benefit was earned during the marriage. [Appellee's] disability benefit through OPERS is through the Original Plan wherein the participant was not required to convert his disability benefit to retirement at age 60 (earliest possible retirement age). Under the Revised plan it is very clear that Rick Jenkins would go off disability at age 65 and begin to receive the service pension. So, the revised plan is clear that disability ends, and retirement begins.
> The Original Disability Plan that [appellee] is actually under does not mandate that the disability end. Further, under the Original Disability Plan, the pension that [appellee] would receive at retirement age, and for life, thereafter, may be far greater than the earned retirement benefit at the time of the disability because service is calculated assuming that [appellee] actually worked to age 60.

The Court further finds that under the Original plan the projected retirement age is 60.

{¶ 62} The court also emphasized that its decision to award appellant a share of appellee's PERS benefits was equitable considering the parties' lengthy marriage. The court stated:

> The Court finds i[t] i[s] not fair and equitable in a 31-year marriage to surrender the marital retirement portion of the pension to the disability pension especially since [appellee] has been able to perform operations in a cattle farm without any help * * * and perform various other activities and work duties for other people.

{¶ 63} Here, the trial court had two viable options from which to choose, and we see nothing in the record that requires us to disturb the court's finding that appellee's disability benefit transmutes into a retirement benefit at age 60.

{¶ 64} Appellee next asserts that the trial court incorrectly valued his pension. Appellee contends that the retirement portion of his benefit, $986.91, represents 24.99% of his disability benefit. He thus claims that appellant would only be entitled to 24.99% of the present value of the marital portion of his pension, or $149,154.31. Appellee then asserts that because that amount is less than the present value of the marital portion of appellant's social security retirement benefits, the court should have awarded appellee the entire value of his pension without any offset.

{¶ 65} We initially observe that the valuation of marital assets involves a factual inquiry. *Wright v. Wright*, 4th Dist. Hocking No. 94CA02, 1994 WL 649271, *4, overruled on other grounds by *Liming v. Liming*, 4th Dist. Athens No. 05CA3, 2005-Ohio-2228, 2005 WL 1056263. Accordingly, reviewing courts will not disturb a trial court's valuation of a marital asset unless

the valuation is against the manifest weight of the evidence. *Baum v. Perry-Baum*, 6th Dist. Wood No. WD-18-085, 2019-Ohio-3923, 2019 WL 4733119, ¶ 15.

{¶ 66} In the case at bar, the trial court credited Kelley's testimony regarding the valuation of appellee's pension. The court noted that Kelley valued the marital portion of the pension at $596,855.97, based upon appellee choosing the retirement option at age 60, and that Kelley did "not apply the frozen benefit earned at the time of disability as discussed above." The record does not contain anything to suggest that the court's valuation of the martial portion of the pension is against the manifest weight of the evidence.

{¶ 67} Appellee next disputes the trial court's decision to offset appellant's share of the pension against the property division. Appellee contends that his pension benefit "is not guaranteed" and that the trial court, therefore, should have entered a Division of Property Order rather than offsetting the amount from the property division.

{¶ 68} In *Hoyt*, the Ohio Supreme Court explained the options available when a trial court considers the parties' retirement assets:

> [The court] must obtain a result which will preserve the asset so that each party can procure the most benefit. Thus, the trial court must have evidence before it detailing the intricacies and terms of the particular plan. Then, the trial court must make an equitable determination based upon the parties' overall financial situation, whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit. There are several alternatives to a direct * * * division, such as an immediate offset of a current assignment of proportionate shares, with either a current distribution or a deferred distribution. A deferred distribution may consist of either a current assignment or a division of the asset at such time that the plan directs distribution based upon the employee's eligibility.

*Id.* at 181, 559 N.E.2d 1292.

{¶ 69} The *Hoyt* court further noted that a trial court may tailor its decision regarding an

equitable division of retirement benefits according to whether the benefits are matured or

unmatured.   When the benefits are unmatured then the trial court:

> may reserve jurisdiction and either determine the parties' proportionate shares at
> the time of the divorce or determine proportionality when the benefits become
> vested and matured.   In determining the proportionality of the pension or
> retirement benefits, the non-employed spouse, in most instances, is only entitled
> to share in the actual marital asset.   The value of this asset would be determined
> by computing the ratio of the number of years of employment of the employed
> spouse during the marriage to the total years of his or her employment.
>      When a trial court decides that a pension or retirement asset shall be paid
> by deferred distribution, it has created a situation where the parties' affairs are not
> concluded.   The non-employed spouse may be placed in a position where he or
> she must monitor the fund, which may also create problems for the plan
> administrator.   Although this alternative divides the risk between the parties that
> the benefits will fail to vest or mature, as an example, there is nothing to prevent
> an employed spouse, for whatever reason, from quitting his or her employment
> and becoming employed elsewhere.   Likewise, the nonemployed spouse bears the
> risk that the employed spouse will die and the expected benefits, before being
> vested or matured, will terminate."

*Hoyt* at 182, 559 N.E.2d 1292.

{¶ 70} The *Hoyt* court recommended that trial courts endeavor to disentangle the parties'

financial relationship.   The court explained that trial courts should:

> "strive to resolve the issues between the parties so as to disassociate the parties
> from one another or at least minimize their economic partnership.   Certainly,
> some circumstances may warrant joint ownership after a divorce and situations
> may evolve where joint decisions must be made.   In these matters, trial courts
> must exercise their fullest discretion.   But, realistically, due to the nature of
> divorce, the circumstances usually are not conducive to joint decision making by
> the parties. Therefore, some effort should be made to disentangle the parties'
> economic affairs."

*Id.* at 182–183, 559 N.E.2d 1292.

{¶ 71} The *Hoyt* court additionally suggested that trial courts "attempt to ascertain the

optimum value the pension or retirement benefit has to the parties as a couple, based upon the

nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." *Id.* at 183, 559 N.E.2d 1292.

**{¶ 72}** Ultimately, the *Hoyt* court determined that using the present value of $439.74 on the date of journalization of the divorce decree would be "unfair and inequitable" and would not "comport with the notion that this asset, the most significant marital asset of these parties, be divided to ensure each party the most benefit." *Id.* at 183–184, 559 N.E.2d 1292. The court thus remanded the matter to the trial court to redistribute the husband's retirement benefits according to its guidelines.

**{¶ 73}** Accordingly, under *Hoyt*:

> [A] trial court may divide a pension fund using the 'present value method' or the 'deferred distribution method.' [*Id.* at 181]. Under the 'present value method,' the court first determines the amount the non-employee spouse is to receive. Secondly, the court: (1) orders that amount withdrawn from the pension fund; or (2) offsets that amount with installment payments or other marital property. Baldwin's Ohio Domestic Relations Law (1990), 274, Section 25.05(E)(3). Under the 'deferred distribution method,' the trial court orders that a percentage of the future benefits be paid from the pension fund to the non-employee spouse if and when the pension matures.

*Newell v. White*, 4th Dist. Pickaway App. No. 05CA27, 2006–Ohio–637, at ¶ 7.

**{¶ 74}** We additionally observe that "' * * * flat rules have no place in determining a property division.'" *Hoyt*, 53 Ohio St.3d at 180, quoting *Cherry v. Cherry*, 66 Ohio St.2d 348, 356, 421 N.E.2d 1293 (1981). Instead, trial courts "must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension plan, and the reasonableness of the result." *Id.*

**{¶ 75}** In the case sub judice, the trial court first determined the present-value of appellee's pension. Based upon Kelley's testimony, the court concluded that the present value

of the marital portion of appellee's pension is $596,855.97. The trial court's decision awards appellant $160,773.40 from appellee's PERS account. The court arrived at this figure after subtracting appellant's social-security-account value from her one-half share of the marital portion of appellee's pension, and then further reducing the amount to equalize the property distribution. The court then calculated the amount of appellant's share of appellee's pension as a percentage. The court divided the amount appellant is entitled to receive ($160,773.40) by the value of the marital portion of the pension ($596,855.97) to reach a percentage of 26.9%. The court then determined that the amount appellant is entitled to receive equates to 25.5% of the entire present value of appellee's pension ($629,253.06). The court concluded its discussion of determining appellant's share of appellee's pension by ordering appellant to "initiate the drafting of a Division of Property Order (DOPO) pursuant to the above division." Appellee's assertion, that the trial court should have effected the division of his pension using a DOPO, seems to be belied by the record. It appears that the trial court did, in fact, effect a division of appellee's pension by means of a DOPO.

{¶ 76} To the extent that appellee argues that the trial court should have ordered the DOPO to state that appellant would only receive the marital portion of the retirement benefit that will be paid once appellee reaches age 60, our decision otherwise disposes of this issue. The trial court had various tools at its disposal to effect an equitable property division. Appellee has not shown that the trial court abused its discretion when choosing the method and means to effect an equitable property division.

{¶ 77} Appellee also suggests that the trial court's decision needs clarification. To the extent that the parties believe that the trial court's decision is ambiguous, they may request the

trial court to clarify its decree. *See generally Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258, 2012 WL 6738669, ¶ 11, quoting *Robins v. Robins*, 10th Dist. No. 04AP–1152, 2005–Ohio–4969, ¶ 13 (noting that when parties "'dispute, in good faith, the meaning of a provision in a decree, or if the provision is ambiguous, the trial court has the power to hear the matter, to resolve the dispute, and to enforce the decree'"); *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 2008-Ohio-1286, 2008 WL 746948, ¶ 7 (noting that trial court retains jurisdiction to clarify and construe its original property division so as to effectuate its judgment).

{¶ 78} Accordingly, based upon the foregoing reasons, we overrule appellee's first-cross assignment of error.

B

{¶ 79} In his second cross-assignment of error, appellee contends that the trial court erred by ordering him to convert his disability benefit to a survivorship annuity retirement benefit. Appellee asserts that his disability benefit is projected to be $3,948.80 per month at age 60, and that if he were to receive retirement benefits rather than disability, his monthly benefit would be $986.91.

{¶ 80} Ohio courts have upheld trial court orders that require the participating spouse, upon retirement, to elect a joint and survivor annuity to protect the nonparticipating spouse's interest in a pension if the participating spouse dies prematurely. *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377, ¶ 19 (10th Dist.). A joint and survivor annuity "provides for payments to a designated beneficiary for the lifetime of the beneficiary." *Id.* at ¶ 48. A joint and survivor annuity thus ensures that the participating spouse's death "will

not cut off the flow of [the nonparticipating spouse's] portion of the pension benefits" if the nonparticipating spouse outlives the participant spouse. *Id.*; *Purdy v. Purdy*, 12th Dist. No. CA2002–11–089, 2003-Ohio-7214, 2003 WL 23095483, ¶ 32 (finding no abuse of discretion in requiring the election of a joint and survivor annuity because "[s]uch a division ensures that the benefits [the nonmember spouse] receives under the plan will not cease if she outlives [the member spouse]"); *Gatie v. Gatie*, 9th Dist. Summit No. 18156, 1997 WL 537667 (concluding that trial court did not abuse its discretion by ordering the husband to provide a joint and survivorship annuity for the wife when parties had been married for thirty years, among other things).

{¶ 81} In the case at bar, we are unable to conclude that the trial court abused its discretion by requiring appellee to "elect a post-retirement joint and survivor annuity at retirement." The trial court could have reasonably determined that this type of annuity will protect appellant's right to receive benefits if appellee predeceases her.

{¶ 82} We also note that Kelley's report that the court admitted into evidence contains a provision entitled "Survivorship Warning." It states:

> Please note that, there is no pre-retirement survivorship under the state pension plans in Ohio. This means that if the participant dies or becomes disabled before retirement, the former spouse may not receive any benefits from the plan. We feel the best way to address this is to require a term life insurance policy that would remain in place until the participant retires. The participant should also be ordered to elect a post-retirement joint and survivor annuity, at retirement, which provides the former spouse with survivor benefits to the extent of their assigned interest. Also, it is essential that the plan be notified of the order to elect survivorship. This is done by sending a certified copy of the Judgment Entry to the attention of the legal department at the plan.

Thus, the record contains evidence to support the trial court's decision.

{¶ 83} Appellee additionally suggests that the trial court's decision forces him to choose a retirement benefit at age 60, which will then reduce his monthly benefit to $986.91—-a 75% reduction in the amount of his benefit.

{¶ 84} We first observe that appellee has not pointed to the place in the trial court's decision where the court agreed with his assertion that taking a retirement-only benefit at age 60 means that appellee would receive only $986.91 per month. Appellee presented evidence to this effect, but the record does not indicate that the trial court credited appellee's evidence.

{¶ 85} Second, the trial court's decision states that at age 60, appellee's monthly benefit of $3,948.80 represents "the retirement component." The totality of the trial court's decision shows that it found that at age 60, appellee's $3,948.80 disability benefit transmutes into a retirement benefit, and not that the court found that of the $3,948.80 that appellee would receive, only $986.91 represents the retirement benefit. To the extent that appellee believes that the trial court's decision is unclear on this issue, he may seek further clarification in accordance with *Cameron* and *Pierron*.

{¶ 86} Accordingly, based upon the foregoing reasons, we overrule appellee's second cross-assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellant/cross-appellee and appellee/cross-appellant shall equally share the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.