[Cite as *James v. James*, 2025-Ohio-1975.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| Ronald Gene James, | : | Case No.    24CA1207 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Yvonne A. James, | : | **RELEASED 5/28/2025** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Marie Hoover, Portsmouth, Ohio, for appellant.
_____
Hess, J.

{¶1}   Yvonne A. James appeals two entries issued by the Adams County Court of Common Pleas, Domestic Relations Division, in a divorce proceeding.  She presents three assignments of error asserting that (1) the trial court abused its discretion in its distribution of marital assets and debt; (2) the trial court abused its discretion in its spousal support order; and (3) the trial court erred by issuing two different decisions.  However, the entries being appealed are not final, appealable orders.  Therefore, we lack jurisdiction to consider the merits of this appeal and dismiss it.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On July 21, 1998, the parties married.  They have no children together.  On July 21, 2022, Mr. James filed a complaint for divorce.  Ms. James filed a counterclaim for divorce.  Ms. James moved for temporary spousal support, and on December 21, 2023, the trial court set temporary spousal support at $6,500 a month.  On July 2, 2024,

the matter proceeded to a bench trial at which the parties testified and exhibits were admitted, including affidavits of the parties listing their individual and joint property and debts.  Mr. James executed his affidavit on July 15, 2022, and Ms. James executed hers on June 15, 2023.

{¶3}    With respect to financial accounts, Mr. James averred that there were four financial accounts titled to him—checking and saving accounts at Fifth Third Bank and Bank of America.  He testified about the approximate balance of those accounts at the time of trial:  Fifth Third checking account $32,000; Fifth Third savings account $108,000; Bank of America checking account $1,700; and Bank of America savings account $2,700.  Ms. James averred that there were five financial accounts—checking and savings accounts at Fifth Third Bank and Bank of America titled to both parties, and a checking account at Bank of America titled to her.  Ms. James did not testify about those accounts at trial.

{¶4}    There was evidence the parties had real property in multiple states.  Mr. James averred that there were two properties titled to him—845 Tulip Road, Lynx, Ohio, and 2205 Acapulco Ave., Salton City, California.  Ms. James averred that there were four properties—(1) 845 Tulip Road, Lynx, Ohio, titled to Mr. James; (2) 2205 Acapulco Ave., Thermal, California, titled to both parties; (3) 2207 Acapulco Ave., Thermal, California, titled to both parties; and (4) 132 N. 88th Place, Mesa Arizona, titled to her.  Mr. James testified that the martial home was on the Tulip Road property.  Mr. James testified that there was a home located at 2205 Acapulco Avenue, Salton City, California. Later, he testified that it was a "double wide mobile home" on a "typical city lot" and that he "purchased a lot next to it to make it a bigger lot."  When asked what he paid for the

property, he testified "around $60,000 is what I give for the, for the home and then I bought the lot separately." He paid $2,500 for the extra lot. Both parties testified Ms. James bought property in Mesa, Arizona before the marriage. The exhibits included an appraisal for the Tulip Road property and for the property at 2205 Acapulco Ave., Thermal, California, which includes a manufactured home appraisal report.

{¶5} There was evidence that the parties had a 1995 or 1998 Chevy 2500 farm truck,[1] a 2016 Chevy Silverado pickup truck, a 2006 Chrysler 300, a 2010 Fleetwood Terra motor home, a tractor, a 1995 Polaris 600, a 2017 Polaris 580,[2] a 2010 car hauler, and a 2011 cargo trailer. Ms. James had an IRA, and Mr. James had U.S. savings bonds. Mr. James rented an apartment in Michigan, where he worked.

{¶6} Mr. James testified that after Ms. James moved out, he took her some items she wanted, like her computer and cell phone. He testified that there were additional assets in the home. In his affidavit, under the category of "Furniture & Household Goods, Furnishings, and Appliances," Mr. James estimated the value of "Full Complete Home Furnishing" was $35,000. Mr. James testified that was "just a guess." When asked if "that 35,000 is true, accurate, and complete," he testified, "Close enough? Yes." In his affidavit, under the category of "All Other Assets Not Listed Above (including jewelry, art, tools, firearms, and other collectibles)," he estimated the value of "Misc. Tools, Guns, Jewelry" was $40,000. At trial, when asked if he agreed with his "own assessment there," he testified, "I'm not an appraiser, but that's what I've, that's what I stated. I'll back that

[1] Mr. James initially testified it was a 1998, but after reviewing a document in which he indicated it was a 1995, he testified "maybe it is a 95," and "if I stated it as a 95 then I'd say it's a 95."
[2] At trial, when asked if he agreed with the values for the two Polarises listed in his affidavit, Mr. James testified, "Not at the present time, no. It's been two and a half years. The Polaris six wheeler, uh, it's completely blown. So, at the time, same as the, uh, 2017 Polaris, so I don't even, I have the one, the other one's completely junk." While this testimony is somewhat confusing, Mr. James never testified that he had gotten rid of either Polaris before trial.

up." Ms. James testified she wanted certain items in the house—the "George Washington" painting, the "Always the Gentleman" painting, her sewing machines, her quilting material, "all my personal belongings," "my clothes," a Pac Man machine, and a "craft machine" she evidently used to make cards.  She wanted her jewelry and testified that "there's necklaces, bracelets, uh, earrings.  There are different, uh, rocks.  Some are diamond quartz.  Uh, topaz."  She also wanted her saddle and bridle.

{¶7}    On July 15, 2024, the trial court issued an entry granting a divorce on the ground of incompatibility. The court awarded Mr. James:  (1) the $108,000 account; (2) the $32,000 account; (3) the $2,700 account; (4) the $1,700 account; (5) the "1998 Chevy farm truck"; (6) the "2017 Chevy Silverado"[3]; (7) "the tractor with debt of $7,000"; (8) the 1995 Polaris valued at $2,000; (9) the 2010 car hauler valued at $3,000; (10) the 2011 car hauler valued at $3,000; (11) the Tulip Road land valued at $485,000 with a mortgage of $165,000; (12) "the double wide trailer on 2 city lots (valued at $62,500 and the debt on the same)"; and (13) "the motor home and its debt of $60,000."  The court also found Mr. James "will have the apartment in Michigan, for work purposes." The court awarded Ms. James:  (1) the 2006 Chrysler valued at $4,565; (2) "the painting titled 'George Washington' and the painting titled 'Always a Gentleman'"; (3) the "clothing and personal items which she took upon moving out of the marital residence"; (4) "the sewing and quilting machines and materials"; (5) the Pac Man machine; (6) her saddle and bridle; (7) any personal clothing of hers remaining at the marital residence; (8) the U.S. Savings Bonds valued at $2,800; (9) "the residence in California valued at $192,500"; (10) "the Mesa Arizona residence as a premarital asset"; (11) the IRA valued at $8,407; (12) "five

---

[3] This date appears to be a typographical error; evidence indicated it was a 2016 Chevy Silverado.

months of marital support valued at $32,500" received during the pendency of the case; and (13) a $200,000 lump sum support payment.

{¶8}   Ms. James moved for findings of facts and conclusions of law under Civ.R. 52, and on October 3, 2024, the court issued an entry containing them. There were differences between the first and second entry.  The first entry awarded the $108,000 account to Mr. James; the second entry awarded it to Ms. James.  The first entry did not assign a value to the motor home; the second entry initially stated it was "valued at $60,000.00" but later stated there was "no value assessed" to it.  The first entry awarded Mr. James "the double wide trailer on 2 city lots (valued at $62,500 and the debt on the same)"; the second entry awarded him "the Double Wide Trailer and 2 city lots valued at $62,500.00."  The first entry awarded Ms. James the "clothing and personal items which she took upon moving out of the marital residence" and personal clothing of hers remaining at the marital residence.  The second entry awarded her "the wife's clothing and personal items" without limiting personal items to those taken upon moving out of the marital residence.  The first entry awarded Ms. James a $200,000 lump sum support payment; the second entry "set spousal support at one half of the take home income of husband, for the next years to his retirement."

{¶9}   Ms. James appealed the July 15, 2024 and October 3, 2024 entries.

## II.  ASSIGNMENTS OF ERROR

{¶10}  Ms. James presents three assignments of error:

First Assignment of Error:  The trial court abused its discretion in its distribution of marital assets and debt.

Second Assignment of Error:  The trial court abused its discretion in its spousal support order.

Third Assignment of Error:  The trial court erred by issuing two different decisions.

## III.  LAW AND ANALYSIS

**{¶11}**  Before we address the merits of the appeal, we must determine whether we have jurisdiction to do so.  Appellate courts "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district . . . ." Ohio Const., art. IV, § 3(B)(2). "'If a court's order is not final and appealable, we have no jurisdiction to review the matter and must dismiss the appeal.'"  *State v. Remy*, 2024-Ohio-2119, ¶ 6 (4th Dist.), quoting *Clifton v. Johnson*, 2015-Ohio-4246, ¶ 8 (4th Dist.).  "'In the event that the parties do not raise the jurisdictional issue, we must raise it sua sponte.'"  *Id.*, quoting *Clifton* at ¶ 8.

**{¶12}**  Civ.R. 75(F) states:

For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:

(1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and, where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children;

(2) Issues of property division, spousal support, and allocation of parental rights and responsibilities or shared parenting have been finally determined in orders, previously entered by the court, that are incorporated into the judgment;

(3) The court includes in the judgment the express determination required by Civ.R. 54(B) and a final determination that either of the following applies:

(a) The court lacks jurisdiction to determine such issues;

(b) In a legal separation action, the division of the property of the parties would be inappropriate at that time.

**{¶13}** The Supreme of Court of Ohio has stated that

> in the context of a divorce proceeding, Civ.R. 75(F) prohibits a trial court from entering a final judgment unless (1) the judgment divides the parties' property, determines the appropriateness of an order of spousal support, and allocates parental rights and responsibilities, including the payment of child support, or (2) the judgment states that there is no just reason for delay and that the court lacks jurisdiction to determine any issues that remain.

*Wilson v. Wilson,* 2007-Ohio-6056, ¶ 15. In this case, the second circumstance does not apply because neither entry states that there is no just reason for delay or that the court lacks jurisdiction to determine any issues that remain. Thus, Civ.R. 75(F) prohibited the trial court from entering a final judgment in this case unless its judgment divided the parties' property and determined the appropriateness of an order of spousal support.

**{¶14}** "[W]hen a divorce decree 'fails to resolve the issues set forth in Civ.R. 75(F), such as property division or spousal/child support issues, [it] is not a final order.'" (Bracketed text in original.) *Makuch v. Makuch*, 2024-Ohio-1305, ¶ 17, quoting *Reeves v. Reeves*, 2016-Ohio-4590, ¶ 11 (12th Dist.). "Ohio appellate courts have . . . consistently held that a divorce decree that fails to dispose of all marital and separate property does not constitute a final order." *Jones v. Jones*, 2019-Ohio-2684, ¶ 9 (4th Dist.), citing *Bibbee v. Bibbee*, 2016-Ohio-5188, ¶ 22 (4th Dist.); *Wohleber v. Wohleber,* 2007-Ohio-3964, ¶ 10 (9th Dist.); *Dach v. Homewood*, 2013-Ohio-4340, ¶ 8 (10th Dist.); and *Johnson v. Johnson,* 2011-Ohio-3001, ¶ 13 (3d Dist.).

**{¶15}** The trial court failed to dispose of all the parties' property. The court did not dispose of the 2017 Polaris 580, the home furnishings, the tools, or the guns. It also appears that the court did not dispose of all the financial accounts. Mr. James averred that there were four accounts titled to him, and he testified about four accounts at trial. The court disposed of those accounts in both entries, though the entries conflict as to

which party receives the $108,000 account. However, Ms. James identified five accounts in her affidavit—four joint accounts and one titled to her. Even if the four joint accounts are the same four accounts Mr. James indicated were titled to him, there is still a fifth account, a second Bank of America checking account titled to Ms. James, which was not addressed.

{¶16} It is also not apparent that the court disposed of the jewelry or craft machine. In the first entry, the court awarded Ms. James "the sewing and quilting machines and materials" but did not mention the craft machine. The court also awarded her the "clothing and personal items" she took when she moved out of the marital home and clothing of hers remaining in the home, but the court did not award her the jewelry as she requested. In the second entry, the court awarded Ms. James "the wife's clothing and personal items" without limitation. It is not clear that the court considered the jewelry or craft machine "personal items" and intended to alter its earlier property division, which is not the purpose of findings of facts and conclusions of law. *See generally Vanderhoff v. Vanderhoff*, 2009-Ohio-5907, ¶ 10 (3d Dist.), quoting *Werden v. Crawford*, 70 Ohio St.2d 122, 124 (1982) ("The purpose of the trial court's issuance of findings of fact and conclusions of law is 'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment'").

{¶17} Because the trial court did not dispose of all the parties' property, the entries being appealed are not final, appealable orders. We suggest that before issuing a final, appealable order, the trial court resolve inconsistencies in its prior entries, give the parties an opportunity to raise any additional issues, and explain its resolution of those issues to facilitate any future appellate review. We observe that in this appeal, Ms. James has

challenged the court's valuation, or lack thereof, of certain assets.  We also observe that there seems to be confusion regarding the property in California.  It appears to consist of (1) a double wide mobile home on a lot located at 2205 Acapulco Ave. which was purchased for $60,000 and appraised at $192,500 under a sales comparison approach, and (2) a second lot located at 2207 Acapulco Ave. which was purchased for $2,500.  However, the trial court awarded Mr. James "the double wide trailer on 2 city lots (valued at $62,500 and the debt on the same)" in the first entry, awarded Mr. James the "Double Wide Trailer and 2 city lots valued at $62,500.00" in the second entry, and awarded Ms. James "the residence in California" valued at $192,500 in both entries.

{¶18}  For the foregoing reasons, we lack jurisdiction to consider the merits of this appeal and dismiss it.

APPEAL DISMISSED.

## **JUDGMENT ENTRY**

It is ordered that the APPEAL IS DISMISSED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
       Michael D. Hess, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**