[Cite as *James v. James*, 2026-Ohio-1698.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| Ronald Gene James, | : | Case No.    25CA1232 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Yvonne A. James, | : | **RELEASED 5/5/2026** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Marie Hoover, Hoover Law Group, LLC, Portsmouth, Ohio, for appellant.

Tyler E. Cantrell, West Union, Ohio, for appellee.

_____

Hess, J.

{¶1}    Yvonne A. James appeals from a judgment of the Adams County Court of Common Pleas, Domestic Relations Division, in a divorce proceeding.  She presents three assignments of error asserting that (1) the trial court abused its discretion in its distribution of marital assets and debt; (2) the trial court abused its discretion in its spousal support order; and (3) the trial court erred by issuing three different decisions which all conflict with one another.  For the reasons which follow, we sustain the first and second assignments of error, reverse the trial court's judgment, and remand for further proceedings consistent with this decision.  This decision renders moot the third assignment of error.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On July 21, 1998, the parties married. They have no children together. On July 21, 2022, Mr. James filed a complaint for divorce. Ms. James filed a counterclaim for divorce and later moved for temporary spousal support. The court set temporary spousal support at $6,500 a month, to commence upon journalization of its order, which occurred December 21, 2023. In February 2024, Ms. James filed a motion for contempt asserting that Mr. James failed to comply with the temporary support order. Subsequently, the court issued an agreed judgment entry stating the parties agreed that Ms. James would withdraw her contempt motion upon Mr. James bringing his temporary support arrears current and that Mr. James shall make the temporary support payments "on or before the 21st day of each month." In March 2024, Ms. James withdrew the contempt motion.

## A. Evidence

{¶3} On July 2, 2024, the matter proceeded to a bench trial at which the parties testified and exhibits were admitted, including affidavits of the parties listing their individual and joint property and debts and affidavits of the parties listing their income and expenses. Mr. James executed his affidavits on July 15, 2022, and Ms. James executed her affidavits on June 15, 2023.

{¶4} With respect to financial accounts, Mr. James averred that there were four financial accounts titled to him—checking and saving accounts at Fifth Third Bank and Bank of America. He testified about the approximate balance of those accounts at the time of trial: Fifth Third checking account $32,000; Fifth Third savings account $108,000; Bank of America checking account $1,700; and Bank of America savings account $2,700.

Ms. James averred that there were five financial accounts—checking and savings accounts at Fifth Third Bank and Bank of America titled to both parties, and a checking account at Bank of America titled to her.  She did not testify about these at trial.

{¶5}    Mr. James had $2,800 in U.S. savings bonds, and there was evidence the parties had real property in multiple states.  The marital home was on Tulip Road in Lynx, Ohio. As of June 7, 2024, an appraiser valued the property at $485,000, and there was evidence regarding the mortgage balance.  Evidence indicated the parties also had two parcels in California at 2205 Acapulco Ave. and 2207 Acapulco Ave., though there is conflicting evidence regarding whether they are in Salton City or Thermal, California. Mr. James testified that there was a vacant home at 2205 Acapulco Ave.  Later, he testified that it was a "double wide mobile home" on a "typical city lot" and that he "purchased a lot next to it to make it a bigger lot."  He testified that in 2000, he paid around $60,000 for the home and $2,500 for the extra lot.  As of April 16, 2024, an appraiser valued 2205 Acapulco Ave at $192,500.[1]  In addition, there was evidence that Ms. James bought a home in Mesa, Arizona prior to the marriage.  Mr. James testified that it was not paid off prior to the marriage and that he helped pay it off but did not recall how much was still owed on it when the parties married.

{¶6}    There was evidence the parties owned various vehicles.  Relevant to this appeal, Mr. James averred the value of the 2017 Polaris 580 was $4,500.  When asked if he still agreed with the values in his property affidavit for that Polaris and another one, he testified, "Not at the present time, no. It's been two and a half years.  The Polaris six wheeler, uh, it's completely blown.  So, at the time, same as the, uh, 2017 Polaris, so I

---

[1] This value is based on the sales comparison approach. The appraiser also found a value of $194,121 under the cost approach but gave the sales comparison approach the most weight.

don't even, I have the one, the other one's completely junk." He did not have any appraisals showing a different value. In her property affidavit, Ms. James estimated the value of the 2017 Polaris 580 was $7,999.

{¶7} Mr. James testified that after Ms. James moved out, he took her some items she wanted, like her computer and cell phone. He testified that there were additional assets in the home. In his property affidavit, under the category of "Furniture & Household Goods, Furnishings, and Appliances," Mr. James estimated the value of "Full Complete Home Furnishing" was $35,000. Mr. James testified that was "just a guess." When asked if "that 35,000 is true, accurate, and complete," he testified, "Close enough? Yes." In his property affidavit, under the category of "All Other Assets Not Listed Above (including jewelry, art, tools, firearms, and other collectibles)," he estimated the value of "Misc. Tools, Guns, Jewelry" was $40,000. When asked if he agreed with his "own assessment there," he testified, "I'm not an appraiser, but that's what I've, that's what I stated. I'll back that up." When asked if as an owner of the property, he felt he could "give fair value," he testified, "Uh, I don't know, uh, if I could or not, but I agree with what I put on here. I'm good with that." Ms. James testified she wanted certain items in the house—the "George Washington" painting, the "Always the Gentleman" painting, her sewing machines, her quilting material, "all my personal belongings," "my clothes," a Pac Man machine, and a "craft machine." She wanted her jewelry and testified that "there's necklaces, bracelets, uh, earrings. There are different, uh, rocks. Some are diamond quartz. Uh, topaz." She also wanted her saddle and bridle.

{¶8} Mr. James testified that he is 64 years old and would be 65 in 20 days. He is employed as a field superintendent in Michigan. He testified that his salary is $185,000

a year, that he gets subsistence pay of around $100,000 due to the location of the job, and that he rents an apartment in Michigan. His 2023 federal income tax return states that the total amount from box 1 on his W-2 form(s) is $294,394.  He initially indicated that he planned to retire in a little less than 2 years, when he was 66 years and 10 months old.  He later testified that he was "going to have to retire" next year because "I cannot do the work I'm doing."  His job is "very physical" and "in the elements."  He did not think he could do the job for many more years.  Hip and knee issues made it hard for him "to go up and down the stair towers and through the mud and in the ice and snow."  He hoped to "make it another couple years." When he retired, he expected to receive Social Security payments of around $3,500 to $3,600 a month; he did not have any pensions or retirement plans. He testified that he was current on support payments.

{¶9}    Ms. James testified that she is 61 years old, suffers from various medical issues, and cannot work. There was evidence that she entered the Marine Corps. in September 1981, that she was honorably discharged in November 1984, that she is entitled to disability compensation at the 100% rate due to service-connected disability/disabilities, and that her total disability is considered permanent. Effective December 1, 2022, her service-connected disability compensation from the Department of Veterans Affairs was $4,256.06 per month.  She testified that she believed the amount went down to $4,183 since she dropped Mr. James as a dependent. Then she testified that while she is still married, she is "getting the $4,256," and once divorced, she believed it would drop to $3,183. She did not bring any documentation to substantiate this testimony. To her knowledge she would receive disability payments until she passed

away. She did not think she would receive Social Security payments. She did have an IRA.

### B. Entry One

**{¶10}** On July 15, 2024, the trial court issued an entry it titled "Judgement Entry" ("Entry One") granting a divorce on the ground of incompatibility. The court awarded Mr. James: (1) the $108,000 account; (2) the $32,000 account; (3) the $2,700 account; (4) the $1,700 account; (5) the 1998 Chevy farm truck; (6) the "2017 Chevy Silverado"[2]; (7) "the tractor with debt of $7,000"; (8) the 1995 Polaris valued at $2,000; (9) the 2010 car hauler valued at $3,000; (10) the 2011 car hauler valued at $3,000; (11) the Tulip Road property valued at $485,000 with a mortgage of $165,000; (12) "the double wide trailer on 2 city lots (valued at $62,500 and the debt on the same)"; and (13) "the motor home and its debt of $60,000." The court also found Mr. James "will have the apartment in Michigan, for work purposes." The court awarded Ms. James: (1) the 2006 Chrysler valued at $4,565; (2) "the painting titled 'George Washington' and the painting titled 'Always a Gentleman'"; (3) the "clothing and personal items which she took upon moving out of the marital residence"; (4) "the sewing and quilting machines and materials"; (5) the Pac Man machine; (6) her saddle and bridle; (7) any personal clothing of hers remaining at the marital residence; (8) the U.S. Savings Bonds valued at $2,800; (9) "the residence in California valued at $192,500"[3]; (10) "the Mesa Arizona residence as a premarital asset"; (11) the IRA valued at $8,407; (12) five months of marital support valued at $32,500 received during the pendency of the case; and (13) a $200,000 "lump sum

---

[2] This date appears to be a typographical error which the court corrected in a subsequent entry; evidence indicated it was a 2016 Chevy Silverado.

[3] The court was evidently confused about the California property and did not realize the double wide trailer awarded to Mr. James was the same as the residence in California awarded to Ms. James.

support" payment due before the end of the year. The court stated that it was awarding a lump sum instead of periodic support because Mr. James "will be retiring in two years" and "has no pension or 401Ks from the companies that he has worked for." The court noted Ms. James "receives $4,256 per month in disability payments."

## C. Entry Two

{¶11} Ms. James moved for findings of facts and conclusions of law, and on October 3, 2024, the court issued an entry titled "Judgment Entry" and "Finding[s] of Fact and Conclusions of Law" ("Entry Two") containing them. The court found the term of the marriage was from July 21, 1998, through July 2, 2024. The court found the Arizona property was Ms. James's separate property and would not be considered when making the property division. The court indicated the other property addressed in Entry Two was "property of the marriage." In addressing the value of the property, the court stated, among other things, that the parties had "the following specific personal property" for which the court had no evidence of value—the "George Washington" painting, the "Always a Gentleman" painting, Ms. James's "personal clothing and personal items," "sewing and quilting machines and materials"; the Pac Man machine; and the "saddle and bridle."

{¶12} There were differences between Entry One and Entry Two regarding the property division. Entry One awarded the $108,000 account to Mr. James; Entry Two awarded it to Ms. James. Entry One did not assign a value to the motor home; Entry Two initially stated it was "valued at $60,000.00" but later stated there was "no value assessed" to it.

**{¶13}** In Entry Two, the court stated that "[w]hile the division of property is not exactly even," it was equitable for the following reasons. As to real estate, Ms. James "testified as to her intentions of moving to California to stay with her mother which led the Court to consider the Tulip Road property for the husband." In addition, "[b]oth parties gave no value concerning personal property items, however wife failed to give a value as to 7 of the 11 items she is receiving, while only 3 of husband's items were unvalued." The court also stated that "[u]nder R.C. 3105.171(F), the Court gave its best efforts to meeting these statutes."

**{¶14}** Regarding spousal support, the court found that Mr. James "submitted his yearly income for 2020 at $145,000 and 2021 at $154,000. The year 2023 was $185,000." The court found that he will retire in two years with no pension, 401K, or Social Security benefits. The court found Ms. James receives $4,256 a month in benefits from the United States Marine Corps. The court stated that "[t]he relative earnings of the parties is unusual with wife suffering from various medical ailments and husband's retirement coming up in two years with no retirement benefits." The court found the marriage was "of some duration"—26 years. The court stated the factors in R.C. 3105.18(C)(1)(f), (h), and (i)-(m) "would not factor into the determination of spousal support for this particular case." Then, even though Entry One awarded Ms. James a $200,000 lump sum support payment, Entry Two "set spousal support at one half of the take home income of husband, for the next years to his retirement" and stated that Ms. James "may keep the U.S. Marine Corp. monthly check as well."

### D. The First Appeal

{¶15} On October 11, 2024, Ms. James filed a notice of appeal from Entry One and Entry Two. The same day, she filed a motion to stay judgment and reinstate temporary spousal support payments during the pendency of her appeal. The trial court did not rule on the motion before we dismissed the appeal on May 28, 2025, for lack of a final, appealable order because the trial court did not dispose of all the parties' property. *James v. James*, 2025-Ohio-1975, ¶ 1, 17 (4th Dist.). We suggested that before issuing a final, appealable order, the trial court resolve inconsistencies in its prior entries, give the parties an opportunity to raise any additional issues, and explain its resolution of those issues to facilitate any future appellate review. *Id.* at ¶ 17.

### E. Post-Appeal Briefs

{¶16} The parties filed post-appeal briefs. Ms. James asserted, among other things, that certain personal property she requested at trial had "negligible values." She asserted the jewelry items she requested were "gifts to her" and should be considered separate property, not marital property. She also claimed the saddle and bridle were pre-marital assets. She then proposed a property division in which Mr. James received assets she valued at $587,385.82, including, among other things: (1) the $108,000 account; (2) the complete home furnishings valued at $35,000; (3) the miscellaneous tools, guns, and jewelry valued at $40,000 (despite her earlier contention about jewelry being her separate property); and (4) the 2017 Polaris 580 valued at $4,500. She proposed that she receive assets she valued at $206,272.16, including, among other things, the "[r]esidence in California" valued at $192,500, various items she asserted had "negligible value," and the saddle and bridle as "pre-marital property." She requested a distributive award of

$190,556.83 to make the distribution of assets and debts equitable. As to spousal support, she initially requested an unstated amount for an "indefinite or indeterminate time period" but then asked the court to adopt the award made in Entry One, which granted her a $200,000 lump sum. Ms. James claimed that she had not received any support since the court issued Entry One, observed that the court had not ruled on her motion to reinstate support, and claimed the court needed to rule on the motion to "have a final appealable order." Ms. James claimed Mr. James "made a pre-payment of $200,000" to her on October 2, 2025. She submitted a notarized statement that the allegations in her post-trial brief were true to the best of her knowledge and belief.

{¶17} Mr. James asserted that he wanted Ms. James to receive the California properties. He also claimed that since trial, he had been storing her personal property, including her jewelry, craft machine, and "household goods" in two storage sheds. He stated, "It is Defendant's belief that the household furnishings and these items are of minimal value and that they would be considered equally separated once the Defendant retrieves her items." He further stated, "The same would go for what household furnishings and items that the Plaintiff retained as the parties had been separated for some time and these items were of similar minimal value." Mr. James proposed that the guns and jewelry were of equal value. He had no opinion on who should get the 2017 Polaris 580 but claimed "no value was introduced at trial" for it and proposed it was worth about $5,000 based on "similar listings." Mr. James asserted that he believed the $108,000 account was awarded to Ms. James.

F.  Entry Three

**{¶18}**  On October 30, 2025, the trial court issued an "Entry of Correction" ("Entry Three"). The court awarded Mr. James: (1) the $108,000 account; (2) the $32,000 account; (3) the $2,700 account; (4) the $1,700 account; (5) the 1998 Chevy farm truck valued at $2,000[4]; (6) the 2016 Chevy Silverado valued at $34,000; (7) the tractor valued at $20,000 with a debt of $6,800[5]; (8) the 1995 Polaris valued at $2,000[6]; (9) the 2010 car hauler valued at $3,000[7]; (10) the 2011 car hauler valued at $3,000; (11) the Tulip Road property with a debt of $153,714.18[8]; (11) the motor home valued at $35,000 with a debt of $60,000; (12) home furnishings in Ohio/"remaining home furnishings at this time"; (13) the 2017 Polaris 580; and (14) tools and guns.  The court awarded Ms. James: (1) the 2006 Chrysler valued at $4,565; (2) "the George Washington Painting and the 'Always a Gentleman Painting'"; (3) "her saddle and bridle"; (4) the U.S. Savings Bonds

---

[4] The entry contains a typographical error, stating the value as "$2,00.00."

[5] In Entry One and Entry Two, the court found this debt was $7,000. Entry Three did not explain why it changed the amount to $6,800. Mr. James initially testified the debt was around $7,000 but later testified it was around $6,800.

[6] The entry contains a typographical error, stating the value as $2,00.00."

[7] The entry contains a typographical error, stating the value as $3,00.00."

[8] In Entry One and Entry Two, the court found this debt was $165,000.  Entry Three did not explain why it changed the amount to $153,714.18.  Mr. James used the $165,000 figure in his July 15, 2022 property affidavit, but there was evidence the $153,714.18 figure was accurate around May 1, 2024.  We observe the statement of facts in Ms. James's appellate brief states that Mr. James admitted the mortgage balance was $152,000 at the time of trial, but her post-appeal brief asserted it was $153,714.18, the same figure the court adopted in Entry Three.  And Ms. James does not challenge this figure in her argument under the first assignment of error.

valued at $2,800; (5) the IRA[9] valued at $6,407[10]; (6) "[a]ll of the California real estate," which the court stated was valued at "$92,500," and "any debt thereon"[11]; (7) the "additional lot in California at 2205 Acapulco Ave." which the court valued at $2,500[12]; (8) her craft machine; and (9) "the Arizona real estate which was a premarital asset." The court also stated that "[j]ewelry and personal property awarded to Defendant would include any of her jewelry remaining in the possession of the Plaintiff, or in the two storage sheds . . . ." The court further stated:

> The issues of spousal support were covered in the previous judgment entry, except to note that the Plaintiff paid $200,000.00 to Defendant to catch up a temporary order of support and the remainder should be viewed as a distributive award to Defendant to further equalize the split of assets.

> All prior orders and awards in the Court[']s Findings of Fact and Conclusions of Law are affirmed in this Judgment Entry to the extent that they are not corrected in this Judgment Entry.

### G. Summary of Final Judgment

{¶19} Following the issuance of Entry Three, the trial court's valuation and distribution of property is as follows:

---

[9] In our prior decision, we explained it appeared the trial court had not disposed of all the parties' financial accounts in Entry One and Entry Two. *See James v. James*, 2025-Ohio-1975, ¶ 15 (4th Dist.). We explained that even if the four accounts Mr. James identified, which the trial court disposed of, were the four joint accounts Ms. James identified in her property affidavit, "there is still a fifth account, a second Bank of America checking account titled to Ms. James, which was not addressed." *Id.* In the post-appeal briefs, Ms. James claimed she used the money she averred was in that account prior to trial. Mr. James claimed he believed the fifth account was awarded to Ms. James but did not know its value at the time of trial. In Entry Three, the court stated it presumed the IRA was the fifth financial account. It is unclear why the court made this presumption given the above, but neither party challenges it on appeal.

[10] In Entry One and Entry Two, the court valued the IRA at $8,407. Entry Three did not explain why it changed the amount to $6,407. Ms. James averred it was valued at $6,407.16 and testified it had only grown by two cents. In our review of the record, we found no evidence it was ever valued at $8,407.

[11] As discussed later in this decision, it is apparent from the record that the $92,500 value is a typographical error. Also, there was no evidence of any debt owed on the property in California.

[12] Evidence indicates the California residence is at 2205 Acapulco Ave., which would mean the additional lot is at 2207 Acapulco Ave.

| Mr. James | | Ms. James | |
| --- | --- | --- | --- |
| **Asset** | **Net Value** | **Asset** | **Net Value** |
| 5/3 Bank Savings Account | $108,000 | 2006 Chrysler | $4,565 |
| 5/3 Checking Account | $32,000 | George Washington painting | No evidence of value per Entry Two |
| Bank of America Savings Account | $2,700 | Always a Gentleman painting | No evidence of value per Entry Two |
| Bank of America Checking Account | $1,700 | Her clothing per Entry Two | No evidence of value per Entry Two |
| 1998 Chevy farm truck | $2,000 | Her personal items per Entry Two | No evidence of value per Entry Two |
| 2016 Chevy Silverado | $34,000 | Sewing and quilting machines & materials per Entry Two | No evidence of value per Entry Two |
| Tractor ($20,000 value; $6,800 debt) | $13,200 | Pac Man machine per Entry Two | No evidence of value per Entry Two |
| 1995 Polaris | $2,000 | Saddle & bridle | No evidence of value per Entry Two |
| 2010 Car Hauler | $3,000 | U.S. Savings Bonds | $2,800 |
| 2011 Car Hauler | $3,000 | California real estate | $92,500 |
| Tulip Road Property ($485,000 value per Entry Two; $153,714.18 debt) | $331,285.82 | Extra lot in California | $2,500 |
| Tools and guns | Value not addressed by court | Fixed term IRA | $6,407 |
| Home furnishings in Ohio/remaining home furnishings | Value not addressed by court | Jewelry | Value not explicitly addressed by court in Entry Three. Appears court may have considered jewelry to fall within category of Ms. James's personal items. No evidence of value of her personal items per Entry Two. |
| Motor home ($35,000 value; $60,000 debt) | ($25,000) | Craft machine | Value not addressed by court |

| 2017 Polaris 580 | Value not addressed by court | Arizona property | Separate property; value not addressed by court and property not considered in division of martial property. |
|---|---|---|---|
| **Total  - $507,885.82** | | **Total - $108,772[13]** | |

{¶20}  Entry Three made a distributive award to Ms. James, but the amount of the award is uncertain.  Entry Three states Mr. James paid Ms. James $200,000 "to catch up a temporary order of support and the remainder should be viewed as a distributive award to [Ms. James] to further equalize the split of assets." It is unclear from the record what portion of the $200,000 payment was "to catch up a temporary order of support" and what portion is the distributive award.

{¶21}  The spousal support award is also unclear.  Entry Three states, "The issues of spousal support were covered in the previous judgment entry," but spousal support was covered in two previous judgment entries—Entry One awarding Ms. James lump sum support of $200,000, and Entry Two, awarding her half Mr. James's take home income "for the next years to his retirement." Entry Three then states, "All prior orders and awards in the Court[']s Findings of Fact and Conclusions of Law are affirmed in this Judgment Entry to the extent that they are not corrected in this Judgment Entry." The phrase "Findings of Fact and Conclusions of Law" plainly refers to Entry Two, which contains them, so the court may having been using the phrase "previous judgment entry" to refer to Entry One. But Entry Three does not acknowledge the inconsistent support

---

[13] As discussed later in this decision, it is apparent from the record the $92,500 value given for the "California real estate" in Entry Three is a typographical error, which changes this total.

awards in Entry One and Entry Two or "correct" the award in Entry Two. Thus, it is unclear

which of the two support awards stands.

## II. ASSIGNMENTS OF ERROR

**{¶22}** Ms. James presents three assignments of error:

First Assignment of Error: The trial court abused its discretion in its distribution of marital assets and debt.

Second Assignment of Error: The trial court abused its discretion in its spousal support order.

Third Assignment of Error: The trial court erred by issuing three different decisions which all conflict with one another.

## III. LAW AND ANALYSIS

### A. Property Distribution

**{¶23}** In the first assignment of error, Ms. James contends the trial court abused

its discretion in its distribution of marital assets and debt.

### 1. Legal Principles

**{¶24}** R.C. 3105.171(B) provides that "[i]n divorce proceedings, the court shall, . .

. determine what constitutes marital property and what constitutes separate property,"

and "upon making such a determination, the court shall divide the marital and separate

property equitably between the spouses, in accordance with this section."

**{¶25}** R.C. 3105.171(C) states:

(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.

(3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.

(4) If the marital property includes a participant account, as defined in section 148.01 of the Revised Code, the court shall not order the division or disbursement of the moneys and income described in division (A)(3)(a)(iv) of this section to occur in a manner that is inconsistent with the law, rules, or plan governing the deferred compensation program involved or prior to the time that the spouse in whose name the participant account is maintained commences receipt of the moneys and income credited to the account in accordance with that law, rules, and plan.

**{¶26}** R.C. 3105.171(E) states:

(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.

(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.

(3) The court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse.

(4) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

(5) If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse.

"'Distributive award' means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code."  R.C. 3105.171(A)(1).

{¶27}  R.C. 3105.171(F) states:

In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶28}  R.C. 3105.171(G) states:

In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."

**{¶29}** """Trial courts enjoy broad discretion when dividing marital property in a divorce proceeding."" *Cee v. Murphy*, 2025-Ohio-3045, ¶ 12 (4th Dist.), quoting *Thompson v. Thompson*, 2024-Ohio-2147, ¶ 62 (4th Dist.), quoting *Jenkins v. Jenkins*, 2021-Ohio-153, ¶ 32 (4th Dist.), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989). "'Therefore, "an appellate court will not reverse a trial court's decision regarding the allocation of marital property absent an abuse of that discretion.""" *Id*., quoting *Thompson* at ¶ 62, quoting *Jenkins* at ¶ 32, citing *Elliott v. Elliott*, 2005-Ohio-5405, ¶ 17 (4th Dist.). An abuse of discretion is an "unreasonable, arbitrary, or unconscionable use of discretion, or . . . a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23, citing *State v. Cunningham*, 2007-Ohio-1245, ¶ 25.

### 2. Positions of the Parties

**{¶30}** Ms. James contends the trial court "made factual errors as well as abused its discretion as it failed to apply the law with respect to dividing the marital assets and debts." She claims the court "should have made an equal distribution of marital assets and debts because it did not make any findings pursuant to R.C. 3105.171(E) that either party engaged in financial misconduct or failed to disclose the nature or existence of the assets and debts of the parties." *Id.* She also claims the court "failed to apply the factors of R.C. 3105.171(F) other than the trial court did state the duration of the marriage." *Id.* Ms. James asserts that the court "either misinterpreted or failed to account for" certain

facts in Entry Three. The court "did not state that the remaining home furnishings were valued at $35,000" even though Mr. James "valued home furnishings at $35,000." The court also "did not state that the tools and guns were valued at $40,000" even though Mr. James "valued the tools and gun at $40,000." When those values are considered and added to the $507,885.82 in valued assets listed in the chart above, she claims Mr. James received $582,885.82 in valued assets, while she only received $108,772 in valued assets. Her calculation appears to mistakenly exclude the 2017 Polaris 580, which she asserted in her statement of facts was valued at $4,500 by Mr. James. Her calculation also uses the $92,500 value for the California residence even though she acknowledges it was appraised at $192,500, not $92,500. Ms. James contends that while she did not give values for some items she received, including her saddle and bridle and jewelry, "the values would more likely than not be negligible as she testified in particular that she wants the things associated with the horse for sentimental reasons."

**{¶31}** Ms. James points out that even though the court made a distributive award to further equalize the asset split, it is unclear what the amount of the award is because the court did not state how much of the $200,000 was to catch up a temporary order of support. She asserts that even if the full $200,000 referenced in Entry Three was considered a distributive award, she will have only received $308,772, while Mr. James will have received $382,885.82. Thus, she claims the property division "was grossly inequitable and was an abuse of discretion" and that we should remand to the trial court to "accurately and equally or at least equitably divide the parties' real and personally [sic] property and the debts thereon."

**{¶32}** Mr. James contends the trial court erred by awarding him the $108,000 account because he "conceded and even argued" below that he believed the court awarded the account to Ms. James and considered it awarded to her. Mr. James states that "[o]nce the accounts are corrected," as he "believes was suppose[d] to be the Order of the Court," he "believes that the Court made a proper distribution of the marital debts and assets." He will "be responsible for all of the debts of the marriage, including a large mortgage, while [Ms. James] has multiple assets as well as over $300,000 in cash."

### 3. Analysis

**{¶33}** The contention that the trial court should have made an equal distribution of marital assets and debts because it did not make any R.C. 3105.171(E) findings is not well taken. R.C. 3105.171(C)(1) states that "[e]xcept as provided in this division or division (E) of this section, the division of marital property shall be equal." Thus, exceptions to the general rule requiring equal division appear in both R.C. 3105.171(C) and (E). "R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable." *Neville v. Neville*, 2003-Ohio-3624, ¶ 5. "In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F)." *Id.*

**{¶34}** The contention that the trial court failed to apply the factors in R.C. 3105.171(F) except the duration of the marriage, R.C. 3105.171(F)(1), is also not well taken. The court listed all the factors in Entry Two. It is evident from the court's findings that it considered the assets and liabilities of the spouses in accordance with R.C. 3105.171(F)(2) and the retirement benefits of the spouses in accordance with R.C.

3105.171(F)(9). R.C. 3105.171(F)(3) is plainly inapplicable because there are no children of the marriage, and as to R.C. 3105.171(F)(4)-(8), Ms. James does not direct our attention to any evidence relevant to or make any argument regarding those factors that would permit us to conclude the court erroneously failed to apply them. *See generally Millenbaugh v. Millenbaugh*, 2024-Ohio-5425, ¶ 29 (6th Dist.), citing *Turner v. Turner*, 2024-Ohio-2200, ¶ 76 (6th Dist.) (if trial court does not have evidence to address some factors in R.C. 3105.171(F), the court's "failure to consider them is not error").

**{¶35}** Nonetheless, we are unable to conduct a meaningful review of the property division.   Initially, we observe while the trial court explicitly characterized property addressed in Entry Two as marital or separate, it did not explicitly characterize property addressed for the first time in Entry Three. It appears the only separate property arguments were made by Ms. James for the Arizona property, her saddle and bridle, and her jewelry, and the trial court arguably addressed each of these items.  In Entry Two, the court characterized the Arizona property as separate property. In Entry Two, the court characterized the saddle and bridle as property of the marriage.[14]  As to the jewelry, Entry Three states that the "[j]ewelry and personal property awarded to Defendant would include any of her jewelry remaining in the possession of the Plaintiff, or in the two storage sheds."  It appears from this statement that the court may have considered the jewelry as falling within the category of Ms. James's personal items, which the court found were property of the marriage in Entry Two.[15]

---

[14] Ms. James refers to the saddle and bridle as "a gift" in the statement of facts in her appellate brief, but she does not argue under the first assignment of error that the court improperly characterized the saddle and bridle as marital property.
[15] On appeal, Ms. James does not claim the jewelry is separate property.

**{¶36}** Even if we presume any property not explicitly characterized by the court is marital property, the court did not explicitly address the value of some assets. The court did not address the value of the craft machine, but we observe no evidence of its value was presented at trial. As noted above, it appears the court may have considered the jewelry as falling within the category of Ms. James's personal items, and the court made a finding in Entry Two that no evidence was presented as to the value of her personal items. However, this still leaves the home furnishings, tools and guns, and 2017 Polaris 580. Ms. James claims the home furnishings are worth $35,000, the tools and guns are worth $40,000, and the 2017 Polaris 580 is worth $4,500 per Mr. James's testimony. However, "'the availability of testimony, in the trial court record, which purports to value property, is not a panacea for failure to specifically enumerate valuations in the entry. An appellate court cannot glean from the record the trial court's estimation of the credibility of the witnesses' valuation testimony unless the trial court provides the answer in the entry.'" *Natto v. Natto*, 1993 WL 130120, *2 (11th Dist. Mar. 26, 1993), quoting *Bollas v. Bollas*, 1989 WL 146420 (11th Dist. Dec. 1, 1989) (*Bollas* explained the court's holding in an earlier unreported decision, *Bushman v. Bushman*, Geauga App. No. 1442 (Mar. 31, 1989)). "[T]he trial court is required to make the valuation of the property in sufficient detail to allow for meaningful appellate review." *Cochran v. Cochran*, 2025-Ohio-2565, ¶ 24 (4th Dist.). The trial court made no findings regarding the value of the home furnishings, tools and guns, and the 2017 Polaris 580, so it is unclear if the court (1) did not consider their value; (2) did not find the valuation evidence to which Ms. James points credible; and/or (3) concluded it could not value any of the items for some other reason,

e.g., it could not value the tools and guns at $40,000 because that figure included the jewelry the court awarded Ms. James.

{¶37} Even putting aside any value of the home furnishings, tools and guns, and 2017 Polaris 580, there is an obvious disparity in the net value of the valued items the court awarded each party. Based on the table above, following the issuance of Entry Three, the net value of the valued items Mr. James received is $507,885.82, and the net value of the valued items Ms. James received is $108,772. Although Mr. James believes the court meant to award the $108,000 account to Ms. James, Ms. James proposed that the court award it to him, and nothing in the record indicates the court intended to award the $108,000 account to Ms. James but mistakenly awarded it to Mr. James. Thus, we will not add that amount to her total and deduct it from his. It is, however, evident that Entry Three contains a typographical error regarding the "California real estate" awarded to Ms. James, which the court stated was valued at $92,500. One can infer this value included only the lot with the residence on it (2205 Acapulco Ave. as explained above) because the court valued the extra lot separately. But no evidence supports a $92,500 value for the lot with the residence on it. Mr. James testified he paid $60,000 for the home in 2000. In Ms. James's June 15, 2023 property affidavit, she averred the property value was $54,405. But as of April 16, 2024, i.e., less than 3 months before trial, its appraised value was $192,500. Therefore, we conclude the $92,500 figure in Entry Three is a typographical error and should be $192,500. But even when this typographical error is corrected, the net value of the valued assets Ms. James received is still only $208,772, i.e., $299,113.82 less than what Mr. James received.

**{¶38}** The court supplemented the division of marital property with a distributive award to "further equalize the split of assets." But as explained above, the amount of that award is unclear. Thus, it is unclear whether Ms. James received more, less, or the same amount as Mr. James under Entry Three (excluding any value of the unvalued assets).

**{¶39}** Even if the court valued the home furnishings at $35,000, the tools and guns at $40,000, and the 2017 Polaris 580 at $4,500, we could not discern whether Ms. James received more, less, or the same amount as Mr. James. In that scenario, the net value of the valued assets Mr. James received would be $587,385.82. If $189,306.91 of the $200,000 referenced in Entry Three is a distributive award, both parties net the same amount. If more than $189,306.91 of the $200,000 is a distributive award, Ms. James nets an unknown amount more than Mr. James. If less than $189,306.91 of the $200,000 is a distributive award, Mr. James nets an unknown amount more than Ms. James.

**{¶40}** For the foregoing reasons, we cannot conduct a meaningful review of the property division. Accordingly, we conclude the trial court abused its discretion in its distribution of marital assets and debt, sustain the first assignment of error, and reverse the property division.

### B. Spousal Support

**{¶41}** In the second assignment of error, Ms. James contends the trial court abused its discretion in its spousal support order.

### 1. Legal Principles

**{¶42}** R.C. 3105.18 addresses spousal support. As used in that section

"spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse

or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code.

R.C. 3105.18(A).

{¶43} R.C. 3105.18(B) states:

In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.

An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.

Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.

{¶44} R.C. 3105.18(C)(1) states:

In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

The court "must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law.'" *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, ¶ 13 (4th Dist.), citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988), paragraph two of the syllabus.

**{¶45}** ""Trial courts generally have broad discretion and 'wide latitude' when evaluating the appropriateness, reasonableness, and amount of a spousal support award."" *Parsons v. Parsons*, 2025-Ohio-2511, ¶ 9 (4th Dist.), quoting *Thompson v. Thomspon*, 2024-Ohio-2147, ¶ 80 (4th Dist.), quoting *Eichenlaub* at ¶ 11, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). ""An appellate court will not reverse a determination

on spousal support unless the trial court has abused its discretion.""" *Id.*, quoting *Vernell v. Vernell*, 2022-Ohio-1510, ¶ 27 (4th Dist.), quoting *Carlisle v. Carlisle,* 2009-Ohio-215, ¶ 10, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 218 (1983). Although "'the decision to award spousal support is discretionary, an appellate court reviews the factual findings to support that award under a manifest weight of the evidence standard.'" *Tittel v. Tittel*, 2021-Ohio-1571, ¶ 12 (4th Dist.), citing *Freeland v. Freeland*, 2003-Ohio-5272, ¶ 14 (4th Dist.). "We will uphold the award '[i]f the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient ... to determine that the support award is fair, equitable, and in accordance with the law.'" (Ellipses in original.) *Parsons* at ¶ 10, quoting *Martindale v. Martindale*, 2019-Ohio-3028, ¶ 90 (4th Dist.), citing *Eichenlaub* at ¶ 13.

## 2. Positions of the Parties

**{¶46}** Ms. James contends the trial court "failed to appropriately consider the statutory factors and failed to indicate an adequate basis for its spousal support award," that information the court included "in the decree was based on factually inaccurate information," and that the court's "inequitable division of property . . . affects any spousal support award as the relative assets and liabilities of the parties is a factor in the determination of spousal support." Ms. James claims the court found her income is $4,256 per month even though evidence showed it would decrease to $3,183 per month after the divorce. She asserts the court found Mr. James's 2023 income was $185,000 but his 2023 W-2 showed it was $294,394. She claims the court found Mr. James had no Social Security benefits, but he testified they will be $3,500 to $3,600 a month. She also makes arguments regarding the other statutory factors.

**{¶47}** Ms. James asserts that Entry Three did not clarify whether the court was adopting the support award in Entry One or Entry Two. She claims the award in Entry Two constitutes an abuse of discretion because Mr. James "already quit his job circumventing the trial court's spousal support order." She asserts that "[d]epending on the distribution of the marital property, the original spousal support order of the lump sum of $200,000 could possibly be acceptable if the distribution of the marital property were closer to equal[.]" She then asserts that she "should have received a spousal support award paid in periodic payments for an indeterminate period of time as well as an equitable distribution of property."

**{¶48}** Mr. James contends the trial court "ordered a lump sum payment" of spousal support which was "appropriate" and "has been made" to Ms. James.[16] He claims the court "reviewed all relevant facts and circumstances" and "was able to determine the parties['] situations as well as future earning potentials." He claims the court "determined that with the large cash payout, the large checking account, as well as the unencumbered real estate that [Ms. James] was left with a large sum of cash and/or assets," "little to no debts," and "a guaranteed large monthly income that will continue for the rest of her life." Mr. James maintains that the court determined that he "was left with a short earning timeline, due to his age, mostly debt, and his assets were encumbered by [a] large mortgage."

---

[16] Mr. James does not direct our attention to anything in the record which shows he made a lump sum spousal support payment of $200,000 to Ms. James. The only payment Entry Three mentioned was made is the $200,000 payment the court indicated was partially "to catch up a temporary order of support" and partially a distributive award.

3. Analysis

**{¶49}** We cannot engage in a meaningful review of the spousal support award because, as explained earlier in this decision, we cannot determine what the award is. And regardless of what the award is, we must reverse it based on our resolution of the first assignment of error. R.C. 3105.171(C)(3) mandates that the trial court "provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code . . . ." And "[t]he factors for making an award of spousal support require the trial court to first determine the relative assets and liabilities of the parties." *Carmichael v. Carmichael*, 2012-Ohio-5811, ¶ 12 (9th Dist.), citing *Zona v. Zona*, 2005-Ohio-5194, ¶ 10 (9th Dist.), citing R.C. 3105.18(C)(1)(i). In resolving the first assignment of error, we concluded the trial court did not make the necessary findings to enable a meaningful review of the property division and reversed the property division. Consequently, we must reverse the support award. *See id.*, citing *Zona* at ¶ 10 ("Because we reversed the trial court's property division, the award of spousal support must also be reversed"). *See generally King v. King*, 2013-Ohio-3426, ¶ 36-37 (4th Dist.) (sustaining assignment of error challenging denial of spousal support because property division is a factor the court must consider in deciding whether to award support, we held the court did not make the necessary findings to enable a meaningful review of its distribution, and we sustained assignments of error dealing with the property distribution, so on remand, the court had to re-evaluate and clarify its property distribution and then revisit the support issue). Therefore, on these limited grounds, we sustain the second assignment of error and reverse the spousal support award.

## C. Conclusion

**{¶50}** We sustain the first and second assignments of error, reverse the trial court's judgment, and remand for further proceedings consistent with this decision. This decision renders moot the third assignment of error, so we need not address it. *See* App.R. 12(A)(1)(c). On remand, the trial court should clearly set forth its final property division (including its characterization of all the parties' property as marital or separate, valuations or explanations for the lack thereof for all property, and the amount of any supplemental distributive award) and any support award in a single document which includes written findings of fact which comply with R.C. 3105.171(G) and indicates the basis for its judgment in sufficient detail to enable this court to determine whether the judgment complies with the law. To facilitate any future appellate review, it would be helpful if the court explicitly addressed Ms. James's contentions that (1) evidence showed her income will drop to $3,183 a month after the divorce; (2) Mr. James's 2023 income was $294,394, not $185,000 as the court previously found; and (3) Mr. James will receive Social Security benefits of $3,500 to $3,600 a month, not no Social Security benefits as the court previously found.

JUDGMENT REVERSED, CAUSE REMANDED.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY:  _____
Michael D. Hess, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**